**Kathy PATRICK, Miss New Mexico, 1980, Plaintiff,**

v.

**MISS NEW MEXICO–USA UNIVERSE PAGEANT, and Miss Universe, Inc., Defendants.**

**No. EP–80–CA–88.**

United States District Court,
W. D. Texas.

May 1, 1980.

R. Don Thorne, El Paso, Tex., for plaintiff.

Richard G. Munzinger, El Paso, Tex., for defendant Miss Universe, Inc.

Ray Tabet, Albuquerque, N. M., for defendant Miss New Mexico-USA Universe Pageant.

## MEMORANDUM OPINION

HUDSPETH, District Judge.

On January 12, 1980, at the Miss New Mexico-USA Pageant in Las Cruces, New Mexico, Plaintiff Kathy Patrick was crowned "Miss New Mexico-USA" by a panel of judges. The title ostensibly carried with it the right to represent the state at the Miss USA Pageant in Biloxi, Mississippi, in May 1980, with the winner of that contest being further entitled to represent the United States in the 1980 Miss Universe Pageant. Plaintiff's hopes were dashed, however, when some three weeks later she was informed by Case Kowall, President of the Miss New Mexico-USA Pageant organization, that she was ineligible for the title of Miss New Mexico because she was officially a resident of Texas. After efforts to work out a settlement proved unsuccessful, Plaintiff filed suit in this court. Claiming jurisdiction based upon diversity of citizenship and jurisdictional amount, Plaintiff asks for injunctive relief and, in the alternative, for damages. On April 28 and 30, 1980, an evidentiary hearing was held on Plaintiff's motion for a preliminary injunction. At the hearing, the following facts were established.

Defendant Miss Universe, Inc. (incorrectly styled "Miss USA-Miss Universe Pageant, Inc." in the complaint) is a California corporation, with its principal place of business in New York City. Its business is the promotion of the "Miss Universe" and "Miss USA" beauty pageants, which are held annually. Each of the contestants in the Miss USA Pageant is herself the winner of a state beauty pageant sanctioned by Miss Universe, Inc. The state pageant is conducted by an individual or organization "franchised" by Miss Universe, Inc. to operate the pageant in that particular state. In New Mexico, the franchisee for 1979–80 is the Defendant Miss New Mexico-USA Universe Pageant,[1] an unincorporated association in which the principals are Case Kowall and Helen Kowall of Las Cruces, New Mexico. (Def.Ex. M–B.) In Texas, the franchisee is Guyrex Associates of El Paso, the principals in which are Richard Guy, Rex Holt, and Carolyn Mitchell (Pl.Ex. 2, 3). The state franchisees in turn appoint sub-agents or sub-franchisees to conduct local or city beauty pageants.

Plaintiff Kathy Patrick resides, and at all times pertinent to this suit has resided, at or near the town of Anthony, which straddles the border of New Mexico and Texas. Her home lies on the Texas side of the line, but is adjacent to the New Mexas Drain, which constitutes the border between the two states at that point. Residence in Anthony has several unusual aspects. For example, the Post Office in Anthony is physi-

1. The same association is referred to elsewhere in the record as the "Miss New Mexico-USA Association" and the "Miss New Mexico-USA Pageant."

cally located in New Mexico, but it serves residents on the Texas side of the line also. Plaintiff's mailing address is a post office box at "Anthony, New Mexico-Texas 88021." One may call long distance to Plaintiff's home telephone using either Area Code 505 (the area code for New Mexico) or Area Code 915 (the area code for Western Texas).

One of the annual local pageants affiliated with Miss USA and Miss Universe is the "Miss Anthony-USA Pageant" (Pl.Ex. 1). Because of Anthony's border location, the site of the annual pageant alternates between Anthony High School (which is in Texas) and Gadsden High School (which lies in New Mexico). The winner is eligible to advance to a state contest, preliminary to the Miss USA Pageant—but in which state? Once again, geography takes on unusual significance. The Miss Texas-USA pageant is held in El Paso, Texas; the Miss New Mexico-USA pageant in Las Cruces, New Mexico. El Paso and Las Cruces lie less than 50 miles apart on Interstate 10, and Anthony, New Mexico-Texas lies not quite halfway between the two. Winners of the Miss Anthony pageant have, on occasion, entered both Texas and New Mexico state contests in the same year. In 1978, a Texas resident, Ella McDaniel, won the title of "Miss Anthony," and proceeded to enter both the Texas and New Mexico pageants. At the Texas pageant, she was chosen "Miss Amity." At the New Mexico pageant, she was awarded the title of Second Runner Up (third place). Apparently, Miss McDaniel's actions provoked no complaint from Defendant Miss Universe, Inc., or from its franchisees in Texas or New Mexico.

In July 1979, Plaintiff Kathy Patrick was awarded the title of "Miss Anthony." Case Kowall was one of the judges. She appeared at the Miss Texas-USA Pageant in August, and captured the title of First Runner Up (second place). Mr. Kowall attended the Texas pageant as a photographer, and was aware of Plaintiff's participation. So, indeed, was Miss Universe, Inc. Frank Sweeney, Vice President of Miss Universe, Inc., attended the Texas pageant, and was introduced to Plaintiff. She advised Swee-

ney that she planned to enter the New Mexico pageant if she lost in Texas, since Anthony lay on the border of the two states. Mr. Sweeney stated, "Aren't you a lucky girl," and "You picked just the right place to be from." On a separate occasion, she stated in the presence of Sweeney and Richard Guy that she planned to enter the Miss New Mexico pageant; whereupon, Sweeney stated "I guess we'll be seeing you in Biloxi!"

In October 1979, Plaintiff did enter the Miss New Mexico contest, by submitting her written application to Case Kowall. The application showed her Texas address, and she did not represent to Mr. Kowall or anyone else that she lived in the State of New Mexico. On the contrary, she stated to Mr. Kowall that she could not sign an affidavit form attached to the application, which called upon the entrant to state that she had resided in New Mexico for six months. Mr. Kowall told her it was unimportant, and that she need not submit the affidavit at all. She then asked him about changing the form to state: "I am representing the city of Anthony, New Mexico." He advised her that it would be acceptable, and that is the way Plaintiff signed it (Def.Ex. A). Mr. Kowall, who had been to Plaintiff's home, had personal knowledge of her Texas residence, and repeatedly assured her that it did not affect her eligibility for the title of Miss New Mexico-USA.

After the judges awarded Plaintiff the title of Miss New Mexico on January 12, 1980, Plaintiff, a regular student at the University of Texas at El Paso, asked Mr. Kowall if she should register at a New Mexico college in order to establish additional contacts with the state. Again, he advised her that it was unnecessary to take such action, and Plaintiff did not so enroll.

About three weeks later, Mr. Kowall called Plaintiff to say "there's a problem." He came to her home in Texas with the affidavit form concerning residence in New Mexico and asked her to sign it. She declined to do so. A few days later, Mr. Kowall told Plaintiff she would have to

give up her title, as she was not eligible for it under Miss Universe rules. The Plaintiff, understandably upset, telephoned Frank Sweeney at the New York headquarters of Miss Universe, Inc. He asked her where she lived, voted, went to school, and got her mail. Upon hearing her truthful answers, he stated "You sound like a Texan to me," but requested her to "wait and see if he could do anything." Mr. Kowall had also entreated her to wait and see if they could "work something out." In March 1980, however, Plaintiff was notified that she could not retain her title. Rather than acquiescing, she chose to file this suit. She claims the right to the title of Miss New Mexico-USA, and the right to compete in the Miss USA Pageant as New Mexico's representative.

The threshold issue is jurisdiction. Both Defendants vigorously question in person-am jurisdiction and service of process. They deny doing business in the State of Texas, or having such contacts therein as to permit Plaintiff to sue them in this forum.

■ The basic core of jurisdictional requirements are well established in the Fifth Circuit. If service is to be perfected pursuant to state law under the terms of Rule 4(d)(7), F.R.Civ.P., such state law must actually confer jurisdiction over the Defendant's 'person' and that exercise of jurisdiction must comport with due process requirements. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 489 (5th Cir. 1974).

■ Texas' long-arm statute is designed to reach as far as federal constitutional requirements will permit. *Atwood Hatcheries v. Heisdorf & Nelson Farms*, 357 F.2d 847, 852 (5th Cir. 1966). The statute provides service of process upon non-residents who engage in business in the state, and defines "doing business" as "entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State . . . The act of recruiting Texas residents, directly or through an intermediary located in Texas, for employment inside or outside of Texas shall be deemed doing business in this State." Tex.Rev.Civ.Stat.Ann., Art. 2031b(4).

■ With respect to the Defendant Miss New Mexico-USA Universe Pageant, Plaintiff's cause of action involves both contractual and employment aspects, so both clauses of Art. 2031b must be fully considered. Plaintiff's contractual duty required active participation in functions as the representative of the City of Anthony and the State of New Mexico. The evidence shows that not all of this activity was within the borders of New Mexico; participation in Texas activities was also required. The Miss New Mexico Pageant contemplated some performance by Plaintiff within the borders of Texas, and this satisfies the initial clause of Section 4, Art. 2031b. The evidence also shows that Mr. Kowall engaged in a course of conduct that could be broadly interpreted as recruitment for "employment" purposes, directly or through a Texas intermediary, Madine Bailey. Plaintiff's entry in the Miss Anthony and Miss New Mexico contests was a direct result of activities on the part of both Kowall and Bailey. Contacts with the State of Texas by Kowall and Bailey were frequent and substantial (Bailey lived in Texas). The present action arose in part from such contacts, and assumption of jurisdiction over the New Mexico Defendant does not offend traditional notions of fair play and justice. As for the propriety of service of process upon Bailey as its agent under Art. 2031b(2), this Court has no difficulty in finding Bailey to have been acting as such an agent given the extent of control exercised over the local pageant operators under the so-called Franchise Agreements (Pl.Ex. 1).

With respect to the Defendant Miss Universe, Inc., a discussion of "doing business" in the context of this case requires the recognition of the special nature of the enterprise involved. An organization engaged in the business of operating a national and international beauty contest is not the same as a manufacturer or labor union. Furthermore, although Miss Universe, Inc. operates its state and local pageants through "franchises," it is dissimilar to a Holiday Inn or a McDonalds. The organiza-

tion resembles a pyramid. Winners of authorized local contests compete in authorized state contests; then those winners go on to the Miss USA Pageant. The local and state pageants are thus the life blood of Miss USA; without them there could be no national pageant. What is in form a New York company granting franchises to states, which in turn grant subfranchises to cities and localities, is in reality one overall organization, one network, one octopus with 50 tentacles and countless sub-tentacles. The interrelationship is not only actual; it is essential to the accomplishment of the organization's purpose. Miss Universe, Inc., is, in a real sense, "doing business" in both Texas and New Mexico, and its state franchisees are, for some purposes, its agents as well.

With respect to the agreement between Miss Universe, Inc., and Guyrex (Pl.Ex. 2), the performance of the agreement was contemplated to be in the State of Texas. In a suit between Guyrex and Universe, the Court would have no difficulty finding sufficient contacts to give Texas jurisdiction. *Bland v. Kentucky Fried Chicken*, 338 F.Supp. 871 (S.D.Tex.1971). The question presented is whether Plaintiff Kathy Patrick, a third party, may obtain jurisdiction of and service upon the franchisor by serving the franchisee.

Texas law is fairly straightforward in its requirements for jurisdiction under both the express language of the long-arm statute and case law. The three basic factors that must be established under the decision in *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.Sup.Ct.1966) are that:

(1) the nonresident . . . corporation must purposefully do some act or consummate some transaction in the forum state;

(2) the cause of action must arise from, or be connected with, such act or transaction; and

(3) the assumption of jurisdiction . . must not offend traditional notions of fair play and substantial justice, [considering] the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

■ The Court finds that Guyrex is the agent of Miss Universe, Inc., for purposes of this suit, in light of the control that the Miss Universe organization exercises over Guyrex in the selection of a representative in the Miss USA competition. Furthermore, Miss Universe, Inc., through its agents and sub-agents, Frank Sweeney, Richard Guy, and Madine Bailey, performed acts and made representations in the State of Texas from which this cause of action in part arises. The first two prongs of the *O'Brien* test are met with respect to Miss Universe, Inc. As for the final prong of that test, the equities seem to weigh heavily in favor of Plaintiff, in considering the "quality, nature, and extent of the activity" in Texas by Defendant and its agents. Assumption of jurisdiction by this court meets the due process requirement that it not offend traditional notions of fair play and substantial justice to require Miss Universe, Inc., to defend in this forum. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Having found in personam and subject matter jurisdiction to be properly invoked as to both Defendants, this Court now focuses upon the merits of Plaintiff's preliminary injunction motion.

■ As to Defendant Miss New Mexico—USA Universe Pageant, there can be no doubt that representations were made to Plaintiff by Defendant's President, Mr. Kowall, both express and implied, that her Texas residence would not interfere with her ability to enter the Miss New Mexico-USA Pageant, or to serve as the titleholder if she succeeded in winning it. Miss Patrick relied on those representations, expended time, effort, and money on the basis of those representations, and is entitled, therefore, to the specific performance of her contract to serve as Miss New Mexico-USA

1980. Specific performance is an appropriate remedy in light of the unique nature of the position of Miss New Mexico-USA, and the opportunities that flow from such title. Any legal remedies would be inadequate and, therefore, an injunction should issue to prohibit this Defendant from any actions designed to deny Plaintiff the right to assume the Miss New Mexico-USA title and compete for the Miss USA crown.

■ Defendant Miss Universe, Inc. is in a slightly different position. The only concrete representations directly attributable to that corporation as a separate and distinct entity consist of an acquiescence in, or at the least, acknowledgment of, without objections, the representations made by Kowall. This occurred, of course, when Sweeney met Plaintiff at the Miss Texas pageant and was informed of her intentions to enter the Miss New Mexico pageant. However, the inquiry does not stop there. The evidence which led to a finding of an agency relationship between Universe and the Texas franchisee sufficient to confer jurisdiction over Universe in this state, likewise is sufficient to prove such a relationship between Universe and Miss New Mexico-USA Universe Pageant. While Universe has opted to conduct its business through the formation of what is referred to as exclusive state "franchises," the clear language of those agreements and conduct pursuant thereto belies an "independent contractor" theory. How the parties to a transaction choose to characterize their relationship is not the controlling factor in determining the legal nature of the relationship. *Northern v. McGraw-Edison Co.,* 542 F.2d 1336, 1343 (8th Cir. 1976), *cert. den.* 429 U.S. 1097, 97 S.Ct. 1115, 51 L.Ed.2d 544 (1977).

■ Under Texas law, as in most jurisdictions, the determinative test in establishing an agency is a finding that the principal has the right to control the agent's manner or method of achieving desired results. *Clark v. Texaco,* 382 S.W.2d 953, 958 (Tex. Civ.App.—Dallas 1964, writ ref'd n. r. e.). Furthermore one may be found to be an independent contractor under some aspects

of the relationship and an agent under other circumstances. Insofar as the state franchisee is "conducting (the) state pageant to designate a candidate for entry in the ( ) Miss U.S.A. pageant," (Def.Ex. M–B, Title Page), it is acting as an agent of Universe. The Franchise Agreement itself illustrates the degree of control Universe exerts over the delegate selection process. (See Appendix to this opinion). Additionally, the very special nature of Defendant's enterprise, whereby its entire operation is dependent upon and revolves around the local selection process, supports an agency theory in a manner not found in the usual franchise which runs a fast-food service or motel service.

■ Legal commentators have recently recognized the "pervasive power of control" exercised by franchisors over franchisees. Brown, *Franchising—A Fiduciary Relationship,* 49 Tex.L.Rev. 650, 664 (1971). Likewise, appellate courts have upheld findings of a principal-agent relationship in franchise transactions when the requisite control is present. *Wood v. Holiday Inns, Inc.,* 508 F.2d 167, 175–76 (5th Cir. 1975); *Drexel v. Union Prescription Centers, Inc.,* 582 F.2d 781 (3rd Cir. 1978). These same decisions place equal, if not greater, reliance upon findings of apparent agency authority in circumstances similar to the present case, 508 F.2d at 176; 582 F.2d at 790–97. Also see *Clark v. Texaco, supra,* 382 S.W.2d at 958. Where representations are made by the principal, and by the agent at the direction of the principal, that the agent's activities are "preliminary to," in conjunction with, or otherwise closely associated with the activities of the principal, and third parties reasonably rely upon such representations, apparent authority may be present. In this case, all letterheads and promotional materials of the franchisee were specifically required to contain the wording "Official preliminary to Miss USA and Miss Universe" (Def.Ex. M–B, Para. 6). The very titles of the pageants held in each state contained the suffix "USA" to designate that the pageants were held in conjunction with and as a prelude to the Miss

USA pageant. Can it plausibly be stated that an unsophisticated young woman would be unreasonable in assuming that the New Mexico-USA pageant was being conducted by Kowall and his Association in conjunction with and under the authority of Miss Universe, Inc.? This Court is unwilling to reach such a blind and narrow conclusion.

Finding an agency relationship, both actual and apparent, the next issue which this Court faces is the consequences which flow from such a finding. By placing responsibility upon its agent-franchisee to select a delegate through a state pageant, Universe has expressly or impliedly entrusted its agent to make representations concerning eligibility requirements in dealings with potential delegates. In so doing, Universe extends its potential liability to be held to those representations, whether they are made fraudulently or in good faith. *Bankers Life Ins. Co. of Nebraska v. Scurlock Oil Co.*, 447 F.2d 997, 1006–07 (5th Cir. 1971). Such liability is better placed on the principal who chose the agent rather than on the third party who merely dealt with such agent. Id. at 1006. See also, *Sun Oil Co. v. Behring Prop. Inc.*, 480 F.2d 310, 314 (5th Cir. 1973) *cert. den.* 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973); *Lanier v. Alenco*, 459 F.2d 689 (5th Cir. 1972). The evidence supports a finding that Plaintiff reasonably relied upon representations made by Kowall regarding eligibility requirements, considering his position of authority in conducting the state pageant under the auspices of Universe and ostensibly in conformity with the national rules, with which he could be expected to be familiar.

■ Universe bears responsibility not only for the affirmative representations made by its agent-franchisee, but also for the silence of its Vice President, Sweeney, when he became aware of the possibility of such representations and the fact that Plaintiff was relying upon them. Ratification by silence or acquiescence can occur in a situation where there is a duty to speak. *Continental Assur. Co. v. Supreme Construction Corp.*, 375 F.2d 378, 383 (5th Cir. 1967). While such a rule "presupposes full knowledge by the principal," *Id.*, Sweeney, who even signed the franchise agreements on behalf of Universe which contained the pageant rules, could reasonably be charged with "full knowledge" as to whether such representations were truthful and accurate. He had a duty on the occasion of his meeting Miss Patrick, or shortly thereafter, to correct the misinformation under which she was acting.

Finally, the fact that dual entry had occurred before in the case of Miss McDaniel, without objection and with the knowledge of Universe's agents, would reasonably impute knowledge of such activity to Universe, as principal, and thereby support a theory of recovery based on reliance by estoppel. If Universe knew, or had reason to know, of such dual entries prior to Plaintiff's entry into the Miss New Mexico pageant, and this Court finds that it did, it had an affirmative duty to correct any misinformation upon which a person such as Plaintiff was likely to rely.

■ The combination of all the factors unique to the case presents an instance where preliminary injunctive relief is permissible and proper. No single factor is determinative of this Court's decision. Clearly, a different result would be called for had Plaintiff deliberately set about to hide her state residency and subvert the pageant rules. Instead, she made every effort to bring that fact to the attention of those who could reasonably be expected to inform contestants of the exact requirements for eligibility. Kowall knew of her residence and, through him and Sweeney, so did Universe. Representations, both direct and implied, as to her dual eligibility were made to Plaintiff from all levels of the Universe hierarchy, including Madine Bailey, Kowall, Sweeney, and Richard Guy. Kathy Patrick should not have to bear the costs for her justified reliance on persons whom Universe chose to have act on its behalf. Injunctive relief is the only adequate remedy under these circumstances and there is abundant evidence that Plaintiff would likely prevail at a full trial on the merits. The preliminary injunction should issue.

STATE: _____ NEW MEXICO _____

MISS UNIVERSE, INC.
*The Mark of Beauty* ©

# EXCLUSIVE FRANCHISE

For conducting a State Pageant
to designate a candidate
for entry in the
1980

## MISS U.S.A. PAGEANT

preliminary to
The Miss Universe Pageant

**MISS UNIVERSE, INC.**

*Executive Office:*

640 Fifth Avenue
New York, New York 10019

The undersigned, hereinafter called "Franchisee," hereby agrees to sponsor, promote and finance a fair and unbiased competition within the territory assigned according to the rules and regulations from time to time set forth by Miss Universe, Inc., hereinafter called "Pageant" and upon the following terms and conditions:

1. Franchisee shall pay to Pageant the sum of $ _500.00_ plus $100 to be used as expense money during the delegate's stay in the Host City. The total payment of $ _600.00_ is to be paid by certified check or money order *upon the signing of this agreement.*

2. Franchisee shall provide to the winning delegate, in its competition, (Hereinafter referred to as "Franchisee's delegate" or as "delegate"), the following:

   A. Round-trip air transportation to, and return from, the site of the finals of the Miss U.S.A. Pageant, which site is hereinafter called "Host City." *NO STUDENT STANDBY FARES ARE PERMITTED.*

B. An adequate wardrobe for rehearsals and appearances during the Miss U.S.A. Pageant.

C. *At least one competition Evening Gown.*

D. A costume symbolic of the state the delegate represents. Professional sports & brand named products prohibited.

E. A quality gift symbolic of the state the delegate represents to be presented to officials of the Host City.

3. Franchisee shall hold the finals of its competition for selection of a delegate to the Miss U.S.A. Pageant at least *45 days prior to the first day of the Miss U.S.A. Pageant.*

4. Pageant shall accept Franchisee's delegate as a contestant in the Miss U.S.A. Pageant and, if selected as Miss U.S.A., as a contestant in the Miss Universe Pageant, and shall furnish hotel accommodations and meals for her during competition.

5. Pageant shall have exclusively, all dramatic, musical, radio, publication, television, personal appearance and motion picture rights in connection with Franchisee's competition for the selection of a delegate to the Miss U.S.A. Pageant shall have the right to use and exploit any or all such rights without consent from or payment to Franchisee. Franchisee shall include in any contract or release signed by its candidates, the following provision and, shall, in addition, obtain the consent of parents or guardians, when such consent is necessary to make any such agreement a binding obligation:

"Miss Universe, Inc. shall have exclusively, all dramatic, musical, radio, publication, television, motion picture and personal appearance rights in connection with the presentation of (insert description of Franchisee's competition for selection of a delegate), or any portion thereof, and shall have the right to use and exploit any or all such rights, without consent from, or payment to me. I hereby release any claim which I may have by virtue of my participation in (insert description of Franchisee's competition for selection of a delegate), or any use of my photograph, likeness, voice or appearance in connection with the exercise of any such rights, including advertising and promotional material relating to any such exploitation."

Franchisee shall cooperate with Pageant in the exploitation of any such rights, provided, Pageant pays to Franchisee, any reasonable expenses which Franchisee is authorized to incur in connection therewith.

6. All references on Franchisee's letterhead or in promotional material to the Miss U.S.A. Pageant shall contain the wording, "Official preliminary to Miss U.S.A. and Miss Universe."

7. Franchisee shall send the following to Pageant immediately upon selection of Franchisee's delegate:

A. At least six glossy photographs of the delegate. (6 8x10 black and white head shots without crown)

B. The delegate's completed notarized official entry forms together with the other required documents.

C. A photostatic copy of the delegate's birth certificate proving that she is at least 18 years old and not yet 28 years old by July 15, 1980.

8. Franchisee's delegate for the title of Miss U.S.A. or Miss Universe shall not permit her photograph to be used in connection with any products or services without the prior written permission of Pageant until at least 60 days after the final awards in the Miss U.S.A. Pageant have been made at Host City.

9. Franchisee shall not assign this franchise without the prior written consent of Pageant. Any attempted assignment without the consent of Pageant shall be void.

10. Franchisee shall not enter into any management contract with its delegate, nor will it share in any monies or awards received by its delegate from Pageant, except, that nothing contained herein shall preclude any management contract conditioned upon the delegate not being selected Miss U.S.A., Miss Universe or one of the first four runners-up in either contest. Each contestant entering Franchisee's contest shall be presented with a printed list of all entrance conditions and a copy of scheduled activities. Both to be signed upon application. Copies of such schedules with signatures affixed should be kept on file for inspection by Pageant officials or government authorities.

11. As of the essence of this agreement, Franchisee and its delegate shall be bound by the following requirements:

A. Delegate must be a citizen of the United States and present a sworn statement that she has been a resident of her state for at least six months prior to the date of the beginning of Franchisee's competition, and be at least 18 years of age and under 28 years of age by July 15, 1980. Franchisee's delegate must bring with her a birth certificate or passport or a certified copy of other public records acceptable to Pageant, establishing proof of her date of birth.

B. Delegate must be of *good health, good character and possess poise, personality and beauty of face and figure.* All judging must be made on these points and in accordance with the official judging procedure furnished to Franchisee.

C. Delegate must never have been married, never had a marriage annulled nor given birth to a child and must provide a sworn statement attesting to these facts. Franchisee is held responsible for proof of foregoing.

D. No delegate is eligible to compete more than once in the Miss U.S.A. Pageant. A delegate may, however, compete more than once in a Franchisee's area.

E. If for any reason the delegate winning Franchisee's contest is disqualified or released from appearing at the Miss U.S.A. Pageant, the next choice of the judges shall be considered the winner. Decisions of the judges shall be final.

F. No photographs of the winning delegate wearing a swimsuit shall be released for publication unless she is wearing a "Catalina" swimsuit.

G. Delegate must not have entered into a management contract with any individual, corporation or organization and must not have given any written or verbal endorsement of any product of any commercial organization, in effect at the time she becomes a delegate to the Miss U.S.A. Pageant, and which will be binding on her in her capacity as Miss U.S.A., Miss Universe, or as one of the first four runners-up in either competition.

H. Delegate must not have entered into any written or verbal agreements or contracts with any individual, corporation or organization for her services to take place after the final judging of the Miss U.S.A. Pageant which will in any way conflict

with the obligations she assumes. Delegate and her parents or guardian must agree prior to the judging to accept the obligations as well as the awards she may win at the Miss U.S.A. or Miss Universe Pageants, and failure to so agree will result in the disqualification of the delegate.

I. Delegate must agree prior to the judging that in the event she becomes Miss U.S.A., Miss Universe, or is one of the first four runners-up in either competition, she will not enter into any agreement, without the prior written consent of Pageant, for services to be performed, consisting of modeling, advertising, theatrical or promotional services or any appearances in which her title or affiliation with the Miss U.S.A. or Miss Universe Pageant is used, in the United States, or if selected Miss U.S.A. or Miss Universe, than anywhere in the world, for the period ending August 15, 1981. In addition, she will not, without the prior written consent of Pageant, appear anywhere in the United States, or if selected Miss U.S.A. or Miss Universe, then anywhere in the world, during said period ending August 15, 1981, in a swimsuit other than a "Catalina" swimsuit, but, if not selected, Miss U.S.A. or Miss Universe, then such requirement shall not apply if the use is only for personal recreational purposes.

12. Franchisee shall faithfully follow all rules for ethical conduct of the competition and maintain the highest standard of judging. *Franchisee shall award promptly the advertised prizes to the winner and contestants.*

13. All events shall be conducted and all contestants selected in a fair and impartial manner; reliable and competent persons shall be engaged for judging the events; fair and objective standards, criteria and procedures in a written formulation shall be furnished to guide the judges in all their determinations; at the request of Pageant, Franchisee will deliver to it a copy of the standards, criteria and procedures used in judging the events.

14. Franchisee shall certify to Pageant on Pageant's form such details of its competition as may be requested by Pageant, including, but not limited to, the date and place of competition, names and addresses of judges, names of sponsors, names and addresses of the winner and four runners-up, and number of contestants participating. Such certificate shall be mailed to Pageant within 48 hours after completion of Franchisee's competition.

15. Franchisee acknowledges ownership by Pageant and/or Catalina, Inc., and the validity, of the trademarks "Miss Universe," "Miss United States of America," "Miss U.S.A.," "Little Miss Universe," "Little Miss U.S.A.," and "Miss Hospitality," and further acknowledges that the Miss Universe Pageant (meaning both the Miss U.S.A. and Miss Universe Pageants) is the exclusive property of Pageant and Franchisee agrees that it will not jeopardize such trademarks and/or property rights in any manner whatsoever.

16. Franchisee will not be a participant in any manner or contribute in any way to the holding of a beauty competition not in affiliation with the Miss Universe and/or Miss U.S.A. Pageants. This is to affirm that as of the date hereof and for the duration of the agreement that as the Franchisee for *Carl & Helen Doewel* neither I nor any organization owned or controlled by me is involved with or contributing directly or indirectly to any beauty pageant or competition involving females, married or unmarried, over the age of 17, other than the Miss U.S.A. Pageant. The foregoing does not refer to participants in teen-age pageants which are expressly excluded from this affirmation.

17. Any misrepresentation or untrue statement by Franchisee or its delegate, or failure to comply with any of the terms, provisions, restrictions or obligations of this agreement on their part to be performed shall, at the option of Pageant, result in the loss of this franchise, disqualification of the Franchisee's winning delegate, and loss of her title and return of any and all prizes awarded, in addition to any other remedies which Pageant may have, all of which shall be deemed cumulative.

18. Franchisee shall not incur, and is not authorized to incur, any obligations or debts for or on behalf of Pageant, any co-sponsors or any sponsors of radio or T.V. shows, covering the event. Franchisee acknowledges that it understands that Pageant, and the co-sponsors, are in no way obligated to pay for any debts or fulfill any promises made by the Franchisee in conducting this competition, except as in this agreement specifically provided. Nothing contained herein shall be deemed to constitute this a joint venture or partnership. The only obligation on the part of Pageant with respect to Franchisee's delegate is to accept her as a contestant, provided she satisfies all the eligibility requirements and complies with and fulfills all of her obligations. Franchisee agrees to indemnify and hold harmless Franchisor from and against any and all losses, costs, damages and expenses, including but not limited to attorney's fees incurred by Franchisor, which arise out of, or are related or incident to Franchisee's activities hereunder. Should any claim be asserted or action commenced against Franchisor respecting such activities, Franchisor shall have the option of opposing such claim or defending such action through counsel of its own choice or through Franchisee's counsel.

Dated at <u>Las Cruces, New Mexico</u>., the <u>23rd</u> day of <u>November</u> 19<u>79</u>

*(Franchisee)*

Miss New Mexico USA Association
By: President and Vice President,
*(Executive Title)*

Accepted and agreed to:
MISS UNIVERSE, INC.
By _____ *12-3-79*
*Vice President* *Date*