Leroy ROSS, Appellant,

v.

TEXAS ONE PARTNERSHIP d/b/a Ewing Estates Apartments, Appellee.

No. 05–89–01133–CV.

Court of Appeals of Texas, Dallas.

July 6, 1990.

Rehearing Denied Sept. 5, 1990.

Brien S. Riepen, Dallas, for appellant.

M. Steve Nagle, A.W. Arnold, III, Dallas, for appellee.

Before WHITHAM, ROWE and BAKER, JJ.

## OPINION

ROWE, Justice.

Leroy Ross appeals from rendition of a summary judgment in favor of Texas One Partnership, doing business as Ewing Estates Apartments. Ross suffered injuries incurred when a security guard patrolling the Ewing Estates Apartments shot Ross with a shotgun. Ross sued James Neal, individually and doing business as Neal Security Company; Johnny Thompson, the security guard; and Texas One Partnership, the owner of the apartments. Texas One moved for summary judgment, contending that it could not be held liable as a matter of law because the security company was an independent contractor. The trial court granted summary judgment in favor of Texas One and severed that action from the rest of the case. In eight points of error, Ross asserts that the trial court erred in granting the summary judgment. We affirm the trial court's judgment.

Summary judgment is proper if the summary judgment record shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See TEX.R. CIV.P. 166a(c). The purpose of summary judgment is the elimination of patently unmeritorious claims or untenable defenses; it is not intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. Gulbenkian v. Penn, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). In reviewing the propriety of a summary judgment, we are bound by these standards: (1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in its favor. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548–49 (Tex.1985).

In the seventh point of error, Ross contends that the summary judgment was erroneously granted because a material fact issue existed as to whether the security company acted as an agent of Texas One. In its motion for summary judgment, Texas One asserted, among other things, that the security company was an independent contractor. The general rule is that an owner of premises is not liable for harm arising out of activity conducted by, and under the control of, an independent contractor. See Exxon Corp. v. Quinn, 726 S.W.2d 17, 19 (Tex.1987); Abalos v. Oil Dev. Co. of Texas, 544 S.W.2d 627, 631 (Tex.1976). The doctrine of respondeat superior is not applicable in such a situation. Phillips Pipe Line Co. v. McKown, 580 S.W.2d 435, 438 (Tex.Civ. App.—Tyler 1979, writ ref'd n.r.e.).

An agency relationship cannot be presumed to exist. Johnson v. Owens, 629 S.W.2d 873, 875 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.). Although the ques-

tion of agency is generally one of fact, *Horne v. Charter Nat'l Ins. Co.*, 614 S.W.2d 182, 184 (Tex.Civ.App.—Fort Worth 1981, writ ref'd n.r.e.), the question of whether a principal-agent relationship exists under established facts is a question of law for the court. *Norton v. Martin*, 703 S.W.2d 267, 272 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). Thus, the existence of an agency relationship can be a question of law to be determined by the agreement between, and the words and conduct of, the parties. *See Mercedes–Benz of North America, Inc. v. Dickenson*, 720 S.W.2d 844, 858 (Tex.App.—Fort Worth 1986, no writ). In other words, if the facts are uncontroverted or otherwise established, the existence of an agency relationship is a pure question of law. *See American Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 539 (5th Cir.1987) (applying Texas law). Proof of agency requires a showing that the alleged principal has the right to assign the agent's task *and* the right to control the means and details of the process to be used to accomplish the task. *Johnson v. Owens*, 629 S.W.2d at 875.

■ On the other hand, an independent contractor is one who, in the pursuit of an independent business, undertakes a specific job for another person, using his own means and methods, without submitting himself to the other's control regarding details of the job. *Pitchfork Land and Cattle Co. v. King*, 162 Tex. 331, 338, 346 S.W.2d 598, 602–03 (1961). Thus, the primary test used to decide whether a party is an independent contractor involves determination as to which of the parties to the relationship possesses the "right of control" over the details of the work. *See Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex.1964). Factors used to determine whether one is an independent contractor include: (1) the independent nature of the contractor's business; (2) his obligation to supply necessary tools, supplies, and materials; (3) his right to control the progress of the work except as to final results; (4) the time for which he is employed; and (5) the method by which he is paid, whether by the time or by the job. *Pitchfork*, 346 S.W.2d at 603. When the controlling facts

are undisputed and only one reasonable conclusion can be inferred from those facts, the question of whether a party is an independent contractor is a question of law. *Id.*

■ A contract between the parties which establishes an independent contractor relationship is determinative of the parties' relationship in the absence of extrinsic evidence indicating that the contract was a subterfuge or that the hiring party exercised control in a manner inconsistent with the contractual provisions. *See Newspapers, Inc.*, 380 S.W.2d at 590, 592. The contract between Texas One and the security company specified certain tasks to be undertaken by the security company, but it did not grant to Texas One the right to control the methods and details involved in accomplishing those tasks. The contract provided that the security company would be self-employed and responsible for all insurance.

■ Ross emphasizes the fact that the contract specified several tasks to be accomplished, as opposed to the one "specific piece of work" referred to in the *Pitchfork* case. *See Pitchfork*, 346 S.W.2d at 602. This distinction has little or no bearing on the question of whether the security company was an independent contractor. We find no authority suggesting that an independent contractor relationship is confined only to cases in which the contractor undertakes only one task. Ross notes that the contract contemplated that the security company would provide services for an indefinite period of time. Although the period of employment is a factor to be considered, *Pitchfork*, 346 S.W.2d at 603, it is certainly not determinative, since the primary test involves the right of control. We note that the contract granted to both Texas One and the security company the right to terminate the contract upon thirty days' written notice. Ross relies on the fact that the security company was to be paid at regular intervals rather than for any discrete job. The method of payment may be considered, *id.*, but it is not a

controlling factor in relation to the ultimate "right of control" test.

We conclude that the contract, viewed alone, established an independent contractor relationship between Texas One and the security company. The contract did not provide that Texas One would possess the right to control the manner and means to be used in accomplishing the tasks assigned to the security company. The contract merely specified some of the tasks to be undertaken. It expressly provided that the security company would be self-employed.

 The question remains as to whether the contract was a sham designed to conceal the true relationship between the parties. Establishing that the contract was such a subterfuge requires evidence that Texas One actually exercised control over the details of the work performed by the security company. *See Newspapers, Inc.,* 380 S.W.2d at 590, 592. The summary judgment proof included excerpts from the deposition of James Neal, the owner of the security company. Neal testified that he and another man that he hired as a supervisor were responsible for supervising the security guards employed by the security company. He stated that he had established certain rules and regulations governing the conduct of his security guards. Neal said that he was not an employee of the Ewing Estates Apartments (Texas One), and he stated that his security company provided services to Texas One as an independent contractor. He testified that his company was hired to provide security services using his expertise as he saw fit. Neal said that he used his own means and methods in performing the security services for the Ewing Estates Apartments. This deposition testimony was uncontroverted.

 Ross suggests that this testimony was not competent summary judgment evidence because it came from an interested witness. According to the applicable rule, uncontroverted testimonial evidence of an interested witness can provide a basis for summary judgment if the evidence is clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and it could have been readily controverted. *See* TEX.R.CIV.P. 166a(c). We note that, although Neal was an interested witness, we do not see that it was necessarily in his interest to testify to facts that would support the elimination of a fellow defendant. In any event, Ross does not explain how the requirements of rule 166a(c) were not satisfied. In our view, Neal's testimony was clear, positive, direct, otherwise credible, and free from contradictions and inconsistencies. His testimony was consistent with the provisions of the contract between Texas One and the security company. Neal was not the only person who could have testified about the right of control and the nature of the relationship between Texas One and the security company. Under these circumstances, we conclude that Neal's testimony was subject to being readily controverted. *See Kimble v. Aetna Cas. & Sur. Co.,* 767 S.W.2d 846, 848–49 (Tex.App.—Amarillo 1989, writ denied); *Fitzgerald v. Caterpillar Tractor Co.,* 683 S.W.2d 162, 164 (Tex.App.—Fort Worth 1985, writ ref'd n.r. e.). Neal's deposition testimony was competent summary judgment evidence as authorized by rule 166a(c).

Applying the primary "right of control" test, Neal's uncontradicted testimony indicates that the security company was an independent contractor. Other factors that can be considered support this determination. Neal stated that his company performed security work for a number of other customers besides Texas One. This certainly indicates that the security company was a business independent of Texas One. Neal testified that his company supplied the necessary tools and materials used by the security guards (badges, flashlights, guns, ammunition, handcuffs, etc.).

 Ross argues that some of the tasks delineated in the contract between Texas One and the security company raise reasonable inferences that the security company personnel received directions from Texas One. Ross notes that the contract provided that the security personnel would show apartments and pass out notices. How-

ever, we view the contractual provisions as merely designating some of the tasks to be accomplished. The fact that additional information would have to be conveyed to the security company personnel before the tasks could be carried out does not imply that Texas One would exercise control over the details of the assigned jobs. Specifying the apartments to be shown or the types of notices to be distributed would involve description of the tasks to be accomplished, as opposed to direction as to the manner and means of accomplishment. There was no evidence indicating, for example, that the security personnel were required to follow a script or checklist when showing apartments. Neal testified that the security guards received training arranged by the security company. There was no evidence that Texas One provided any training to the security company personnel.

Based on the evidence and reasonable inferences, we determine that the security company was an independent contractor as a matter of law. We overrule the seventh point of error.

In his first point of error, Ross contends that the trial court erred in granting summary judgment because his petition gave fair notice of an alleged intentional tort, an issue which was not addressed by Texas One's motion for summary judgment. Of course, when allegations in a plaintiff's petition are not controverted by a defendant's summary judgment motion or proof, the granting of summary judgment in favor of the defendant is improper. *See Pollard v. Missouri Pac. R.R.*, 759 S.W.2d 670, 671 (Tex.1988).

Assuming for the moment that Texas One would be liable for an *intentional* tort committed by the security company, we nevertheless conclude that Ross's first point of error lacks merit. His petition simply did not allege an intentional tort. The petition describes the alleged shooting incident and then alleges numerous specific acts and omissions, including the shooting itself, which were described as constituting negligence or gross negligence. One of the listed acts of negligence or gross negli-

gence was "[w]illfully discharging a firearm at the Plaintiff with the malicious intent to cause bodily harm and/or death." In a paragraph requesting exemplary damages, Ross alleged "acts and/or omissions of wanton, willful and malicious misconduct." Read in context, the allegations now asserted to be allegations of intentional conduct were in fact allegations of gross negligence. Ross suggests that shooting someone with a gun may be presumed to be intentional. We reject this contention because of the obvious possibility that any given shooting may well have been negligent as opposed to intentional.

Ross relies on the rule that a petition will be construed liberally in favor of the pleader when there are no special exceptions. *See Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982). That rule does not help Ross because his petition contained no fair indication that an intentional tort was being alleged. To be sufficient, a petition must provide fair and adequate notice of the facts upon which the pleader's claim is based, and the opposing party must be supplied with information sufficient to enable him to prepare a defense. *Id.* at 810. Ross's petition specifically alleged both negligence and gross negligence, whereas allegations of intentional conduct were conspicuously absent. Allegations of wantonness, willfulness, and malice were raised in the context of charges of gross negligence and a request for exemplary damages. Ross suggests that Texas One could have specially excepted to the petition to seek clarification. This argument is without merit. We are aware of no authority indicating that a defendant must specially except because a plaintiff has wholly failed to plead an alternative cause of action. Our judicial system rests upon the foundation of adversary presentation, *Fikes v. Ports*, 373 S.W.2d 806, 808 (Tex.Civ.App.—Fort Worth 1963, writ ref'd n.r.e.), and one party is under no obligation to help his adversary plead an unpleaded cause of action. We overrule the first point of error.

We now address the question of whether the summary judgment was war-

ranted in view of the exceptions to the general rule that an owner of premises is not liable for harm caused by the activity of an independent contractor. Ross argues in his second point of error that the summary judgment was erroneously granted because a material fact issue existed as to the personal character of the premises owner's duties owed to the public when taking measures to protect its property. In support of this point of error, Ross relies on *Dupree v. Piggly Wiggly Shop Rite Foods, Inc.*, 542 S.W.2d 882 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n.r. e.). In that case, the court of appeals held that a grocery chain was liable for an incident of false imprisonment perpetrated by employees of an independent contractor. *Id.* at 890.

There is a crucial distinction between that case and the case before us: the fact that the court was dealing with a case involving an intentional tort, false imprisonment. The court considered an exception to the general rule that an owner of premises is not liable for the conduct of an independent contractor. The court described the exception in this manner:

> [B]ecause of the "personal character" of duties owed to the public by one adopting measures to protect his property, owners and operators of enterprises cannot, by securing special personnel through an independent contractor for the purposes of protecting property, obtain immunity from liability for at least the intentional torts of the protecting agency or its employees.

*Id.* at 888; *see* Annotation, *Liability of One Contracting for Private Police or Security Service for Acts of Personnel Supplied*, 38 A.L.R.3d 1332, 1339 (1971). The court then analyzed what it described as the leading case adopting this exception, a case involving the intentional tort of false arrest. *See Adams v. F.W. Woolworth Co.*, 144 Misc. 27, 257 N.Y.S. 776 (N.Y.Sup. Ct.1932). The court quoted extensively from the New York case, including the following:

> This is not the case of a contractor doing his work negligently. Where negligence is the sole basis of the liability, the doctrine of respondeat superior has been held inapplicable to independent contracts. Negligence does not enter into the tort of false arrest. The act itself, if not justified under statute ..., is tortious, irrespective of negligence.

*Dupree*, 542 S.W.2d at 889. The court cited a number of other cases from other jurisdictions and stated:

> The weight of the above authorities seems to be that one may not employ or contract with a special agency or detective firm to ferret out the irregularities of its customers or employees and then escape liability for the malicious prosecution or false arrest on the ground that the agency and or its employees are independent contractors.... Such cases adopting this policy have been founded on the principle that he who expects to derive advantage from an act which is done by another for him, must answer for any *intentional* injury which a third party may sustain from it.

*Id.* (emphasis added). The *Dupree* court adopted the exception as stated above, and the language used by the court demonstrates that it viewed the exception as applying to *intentional* torts. The court stated its holding in this way:

> We hold that Piggly Wiggly by securing through the guise of an independent contractor, security guards to protect its property by various means, cannot obtain immunity from liability for false imprisonment which such store owner would not be equally entitled to if such owner itself directly selected and paid the agents expressly retaining the power of control and removal. When a store owner undertakes these functions its duties are *personal* and non-assignable and where the company arranges for and accepts the service, it will not be permitted to say that the relationship of master and servant as far as responsibility is concerned, does not exist. Negligence does not enter into the tort of false imprisonment. The act itself is tortious irrespective of negligence.

*Id.* at 890 (emphasis in original). Although the court made some abstract statements

about nondelegable duty cases involving only negligence, *see id.*, it is clear that the court's holding was based on the fact that the tortious act was intentional.[1] Because the case before us does not involve an intentional tort, *Dupree* is inapplicable. We therefore overrule Ross's second point of error.

In the third point of error, Ross maintains that the trial court erred in granting summary judgment because a material fact issue existed as to the inherently dangerous activity performed by the security company. There is an exception to the general rule of a hiring party's nonliability for harm caused by an independent contractor. One who hires an independent contractor is liable for injuries caused by the contractor's failure to exercise due care in performing work which is inherently dangerous. *Loyd v. Herrington*, 143 Tex. 135, 138, 182 S.W.2d 1003, 1004 (1944); *Gragg v. Allen*, 481 S.W.2d 452, 454 (Tex. Civ.App.—Waco 1972, writ dism'd w.o.j.). The theory underlying this kind of liability is that one who engages a contractor to do inherently dangerous work remains subject to an absolute, nondelegable duty to see that the work is performed with that degree of care which is appropriate to the circumstances. *Loyd*, 182 S.W.2d at 1004.

The Texas case most closely analogous to this case is *Gessell v. Traweek*, 628 S.W.2d 479 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.). In *Gessell*, a house owned by Elmer Gessell was occupied by his daughter and son-in-law, Betsy and T.W. Larkin. One evening, T.W. Larkin went outside the house to investigate a noise. When he saw a pickup truck speeding away, he shot at the truck, and one of the occupants of the truck was injured. The injured plaintiff argued that T.W. Larkin was an independent contractor hired by Gessell to protect the house and the premises and that the work to be performed was inherently dangerous. *Id.* at 481. The court of appeals quoted two relevant sections of the Restatement (Second) of Torts. Those provisions state:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

RESTATEMENT (SECOND) OF TORTS § 416 (1965).

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

*Id.* § 427. The court of appeals then stated that "[t]hese sections have no application where the negligence of the contractor creates a new risk not inherent in the work itself." *Gessell*, 628 S.W.2d at 482. The court held as a matter of law that the work of caring for and protecting the property was not inherently dangerous. *See id.* at 482.

Ross argues that the present case is significantly different from the *Gessell* case. He notes that there was summary judgment evidence that Texas One discussed the use of firearms with the security company. The contract between Texas One and the security company listed the duties of the security company, and those duties included stopping vandalism and drug traffic. Texas One knew that security company personnel were carrying weapons and provided an office on the premises for storage of those weapons. Based on these facts and "reasonable inferences" associated therewith, Ross argues that there was a

---

**1.** Although some of the court's language suggests that the independent contractor relationship was a subterfuge, the court did not specifically consider the propriety of the jury finding that the security company was an independent contractor.

factual issue as to whether the work undertaken by the security company was inherently dangerous. Specifically, Ross contends that a fact finder could reasonably infer that confrontations would take place between the armed guards and third parties.

At least one Texas court has noted, however, that it has been held that the protection of one's property with firearms does not, in and of itself, constitute an inherently dangerous activity. *See Dupree*, 542 S.W.2d at 888 (citing *Brien v. 18925 Collins Avenue Corp.*, 233 So.2d 847 (Fla.Dist. Ct.App.1970), and 38 A.L.R.3d 1332, 1340). In the cited Florida case, the plaintiff appealed from a summary judgment granted in favor of the premises owner. *Brien*, 233 So.2d at 847–48. The appellate court held as a matter of law that an owner of real property who hires an independent contractor security company to protect his property is not liable for harm allegedly caused by the negligent discharge of a firearm by an employee of the security company. *Id.* at 849. The court reasoned that lawful activity involving the use of firearms is not inherently dangerous activity. *Id.* The court's holding is consistent with the previously discussed *Gessell* case.

We conclude that owners of premises should be able to hire independent contractors for purposes of providing armed security and protection of their property without being exposed to automatic liability for the negligent discharge of firearms by employees of the independent contractor. We do not consider it particularly uncommon that protection of property may involve stopping vandalism or drug trafficking. In any event, the summary judgment record contains no indication that the incident involved in this case was related to vandalism or drug trafficking. We follow *Brien* and hold as a matter of law that the work undertaken by the security company in this case was not inherently dangerous work. The alleged negligent act of discharging the shotgun was not a risk inherent in the work contracted for. *See Gessell*, 628 S.W.2d at 482. We overrule the third point of error.

In his fourth point of error, Ross contends that the summary judgment was erroneous because a material fact issue existed as to whether the activities complained of were contemplated by the contract or in furtherance of the premises owner's business. This point of error is without merit because the "exceptions" to the general rule of nonliability allegedly relied on by Ross simply do not exist, and Ross's reliance on certain cases is misplaced. He states that a party who hires an independent contractor may be found liable for the contractor's activities that are reasonably contemplated by the contract. He cites *Texas Compensation Insurance Co. v. Matthews*, 504 S.W.2d 545, 549 (Tex.Civ. App.—Dallas 1973), *rev'd*, 519 S.W.2d 630 (Tex.1974), for this proposition. We note initially that Ross failed to inform this Court that the cited case was reversed. Secondly, the case does not state the proposition asserted by Ross. This Court in *Matthews* held that the acts of an independent contractor are the acts of the hiring party to the extent that they are *required* by the contract. 504 S.W.2d at 549. The Court also based its decision on the rule that when work required by a contract is *necessarily* dangerous, the premises owner and the contractor have a duty to take precautions against the danger. *Id.* The other case cited by Ross in support of his nonexistent "exception" states that an employer may be held liable for injuries which might reasonably have been contemplated by the parties *and* which result directly from *inherently dangerous* work. *See Loyd*, 182 S.W.2d at 1004.

Ross states the other "exception" to the rule of nonliability in this manner: a party who hires an independent contractor may be found liable for the contractor's activities that are in furtherance of the hiring party's business and/or part of the contractor's duties as *agent* of the hiring party. Of course, if a contractor is in fact an *agent* of the hiring party, there is no need to resort to an exception to the general rule of nonliability for the acts of *independent contractors*. In any event, we have already determined that the security company was not an agent of Texas One. We

conclude that Ross is apparently attempting to suggest that the security company was in fact Texas One's agent, since the cases he cites in support of his second "exception" involve questions as to whether there was an agency relationship. *See Moore's, Inc. v. Garcia,* 604 S.W.2d 261, 264 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Patrick v. Miss New Mexico–USA Universe Pageant,* 490 F.Supp. 833, 839 (W.D.Tex.1980). We find no merit in the fourth point and overrule it.

■ In the fifth point of error, Ross contends that the trial court erred in granting summary judgment because a material fact issue existed as to whether Texas One used reasonable care in keeping the premises under its control in a safe condition. In arguing this point of error, Ross relies on a number of premises defect cases. However, the present case is not such a case; it is a case involving injury caused by activity conducted on the premises. *See Redinger v. Living, Inc.,* 689 S.W.2d 415, 417 (Tex. 1985). Ross also invokes cases holding that a premises owner may be liable for the acts of an independent contractor if the owner has the right to control, or exercises actual control over, the contractor's acts. *See Pollard,* 759 S.W.2d at 671; *Redinger,* 689 S.W.2d at 418. *Redinger* states that a premises owner may be liable for harm caused by an independent contractor even if the owner retains only some control over the contractor, albeit not the degree of control which would subject him to liability as a master. The owner's role must involve more than a general right to order work to start or stop, to inspect progress, or to receive reports. *Redinger,* 689 S.W.2d at 418.

We have previously discussed the questions of right of control and exercise of control in connection with the seventh point of error. The summary judgment record simply does not indicate that any material fact issues existed regarding control. Both *Pollard* and *Redinger* are readily distinguishable from this case. Ross's reliance on *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546 (Tex.1985), is also misplaced because *Nixon* was a premises de-

fect case, and the asserted negligence per se was committed by the premises owner. As noted, the present case is not a premises defect case, and it involves the acts of an independent contractor. We overrule the fifth point of error.

■ Ross maintains in his sixth point of error that the summary judgment was erroneous because a material fact issue existed as to whether Texas One was negligent in hiring the security company. An employer has a duty to use ordinary care in employing an independent contractor. *Smith v. Baptist Memorial Hosp. Sys.,* 720 S.W.2d 618, 627 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). One who hires an independent contractor may be held responsible for the contractor's acts if the employer knew or should have known that the contractor was incompetent and a third party is injured because of that incompetency. *Texas American Bank v. Boggess,* 673 S.W.2d 398, 400 (Tex.App.—Fort Worth 1984, writ dism'd by agr.). Thus, one who hires an independent contractor has a duty of ordinary care and reasonable inquiry.

The summary judgment record shows that while the contract between Texas One and the security company was being negotiated, Neal provided to Texas One documentation showing that the security company was licensed by the State of Texas. The record also contains affidavits indicating that Texas One contacted two references regarding the security company. Both references provided favorable reports about the security company. This evidence is uncontroverted. In the absence of controverting evidence or other evidence concerning the duty of reasonable inquiry, we find no basis for Ross's assertion that a material fact issue existed as to whether Texas One knew or should have known that the security company was incompetent when hired. We overrule the sixth point of error.

■ In the eighth point of error, Ross argues that the trial court erred in granting summary judgment because Texas One's operative pleading did not provide a basis for the summary judgment. Al-

though the record before us does not indicate that Texas One's first amended answer (raising the issues dealt with in the motion for summary judgment) had been separately filed, the answer was attached to Texas One's motion for summary judgment. Moreover, we find no indication that Ross raised this alleged error at the trial court level. Had Ross objected to the alleged defect in pleadings, the defect could have been easily cured. *See Jones v. McSpedden,* 560 S.W.2d 177, 179–80 (Tex. Civ.App.—Dallas 1977, no writ). Because the error now raised on appeal was not brought to the attention of the trial court, any error was waived. *See* TEX.R.APP.P. 52(a); TEX.R.CIV.P. 90, 166a(c). We overrule the eighth point of error.

We affirm the judgment of the trial court.