Steve **ALVARADO**, Homero Torres, and Alejandro Martinez, Appellants,

v.

**OLD REPUBLIC INSURANCE COMPANY, Appellee.**

No. 13–96–189–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 28, 1997.

Rehearing Overruled Nov. 6, 1997.

Dori Contreras Garza, McAllen, Adam Poncio, Cerda, Garriga & Poncio, San Antonio, Frank Herrera, Jr., Law Offices of Frank Herrera, San Antonio, for Appellants.

Lowell Denton, Charles H. Sierra, William McKamie, San Antonio, for Appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and YANEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

This is an appeal from the grant of a summary judgment. By three points of error, appellants, Steve Alvarado, Homero Torres, and Alejandro Martinez, contend that issues of material fact exist, that appellee, Old Republic Insurance Company, did not sustain its burden of showing it was entitled to summary judgment, and that appellants' claims were not barred by *res judicata*, collateral estoppel, release, or accord and satisfaction. We affirm.

On March 15, 1989, appellants were traveling from Corpus Christi to Edinburg in a van owned by U.S. Home Corporation. They were injured when a vehicle traveling the wrong way on U.S. Highway 77 collided with the van. On or about May 9, 1989, appellants filed workers' compensation claims with Old Republic seeking medical and indemnity benefits. On May 29, 1989,[1] Old Republic denied appellants' claims on the basis that they were not employees of its insured, U.S. Home. Appellants filed suit claiming breach of the duty of good faith and fair dealing.

Old Republic moved for summary judgment on the following grounds:

1) there was no breach of the duty of good faith and fair dealing as a matter of law because there was evidence showing appellants were not U.S. Home employees, thus there was a reasonable basis for denying appellants' claims;

2) the claims were barred by *res judicata*, collateral estoppel, release, and/or accord and satisfaction; and

3) there was no valid claim for actual damages, thus there was no basis in law for a claim for exemplary damages.

Appellants responded that (1) there was some evidence showing the absence of a reasonable basis to deny appellants' claims, (2) the claims were not barred, and (3) the claim for exemplary damages was valid. The trial court granted Old Republic's motion for sum-

---

1. At the time of the accident, a carrier was required to either pay the worker's claim or file a statement controverting the claim within 20 days of the notice of injury. Act of June 19, 1983, 68th Leg., R.S., ch. 989, § 1, 1983 Tex. Gen. Laws 5379, repealed by Act of December 13, 1989, 71st. Leg., 2d C.S., ch.1, § 16.01(7), 1989 Tex. Gen. Laws 114. The period is now 60 days. Tex. Lab.Code Ann. § 409.021(c) (Vernon 1996).

mary judgment on February 28, 1996. This appeal followed.

By their first point of error, appellants contend that the trial court erred in granting summary judgment to Old Republic on appellants' claims of bad faith because there is a fact question concerning whether there was a reasonable basis for denying or delaying appellants' claims.

■ The rules related to the burden undertaken by a defendant seeking summary judgment are well-known. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471–72 (Tex.1991). The function of summary judgment is not to deprive a litigant of the right to a full hearing on the merits of any real issue of fact but to eliminate patently unmeritorious claims and untenable claims. *See Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (Tex.1952). A defendant who moves for summary judgment may meet the burden of showing that the plaintiff has no cause of action by either (1) negating at least one essential element of each theory of recovery, or (2) conclusively proving all the elements of an affirmative defense. *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993); *H.S.M. Acquisitions, Inc. v. West,* 917 S.W.2d 872, 877 (Tex.App.—Corpus Christi 1996, writ denied). Once the movant establishes that it is entitled to summary judgment, the burden shifts to the nonmovant to show why summary judgment should be avoided. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Neuhaus v. Richards,* 846 S.W.2d 70, 77 (Tex.App.—Corpus Christi 1992), judgment set aside, 871 S.W.2d 182.

■ The trial court's order granting the motion for summary judgment does not state the specific grounds on which it was granted. Therefore, the summary judgment must be affirmed if the appellee sustains its burden of proof on any one of its theories. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *Matlock v. Kittleman,* 865 S.W.2d 543, 544 (Tex.App.—Corpus Christi 1993, no writ).

Appellants based their cause of action for breach of good faith and fair dealing on allegations that Old Republic had no reasonable basis for denying their claims. *See Ar-*
nold v. National County Mut. Fire Ins. Co., 725 S.W.2d 165, 167 (Tex.1987). In *Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48 (Tex. 1997), the Supreme Court articulated a new standard, declaring that an insurer acts in bad faith when denying or delaying payment of a claim if it should have been "reasonably clear" that the claim was covered. *Id.* at 54–56. The Court directed that the new standard should be applied by reviewing courts immediately, even though a case arose and was argued under the previous "no reasonable basis" standard. *See State Farm Lloyds v. Nicolau,* 951 S.W.2d 444 (Tex.1997) (applying new standard on same day of pronouncement).

■ Under the new standard, the proponent of a bad faith claim has the burden of proving that the insurer knew or should have known that it was reasonably clear that the claim was covered. As movant for summary judgment, the insurer may negate an essential element of the appellants' claim by showing that its liability was not reasonably clear, *i.e.,* that there was a reasonable basis for believing a claim was not covered. *See Nicolau,* 951 S.W.2d at 446; *Lyons v. Millers Casualty Ins. Co.,* 866 S.W.2d 597, 601 (Tex. 1993); *Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex.1988) (carriers retain right to deny invalid or questionable claims without being subject to bad faith liability for erroneous denial of a claim).

■ For purposes of eligibility for workers' compensation benefits, Texas law defines an employee as "a person, other than an independent contractor or the employee of an independent contractor, who is engaged in construction, remodeling, or repair work for the employer at the premises of the employer." Tex. Labor Code Ann. § 401.012(b)(2) (Vernon 1996). The meaning of the word "employee" is the same in the context of a common-law liability claim. *Gulf States Underwriters of Louisiana, Inc. v. Wilson,* 753 S.W.2d 422, 426 (Tex.App.—Beaumont 1988, writ denied); *Northwestern Nat'l Life Ins. Co. v. Black,* 383 S.W.2d 806, 810 (Tex.Civ. App.—Texarkana 1964, writ ref'd n.r.e.). An insurance carrier is liable for compensation only to employees of the insured company.

TEX. LABOR CODE ANN. § 406.031 (Vernon 1996).

■ Old Republic contends it determined that appellants were independent contractors and not employees of its insured, U.S. Home, and for that reason appellants' claims for workers' compensation benefits were denied. We find this contention to be in the nature of an affirmative defense to the allegation of bad faith because Old Republic has no liability to parties not covered by workers' compensation insurance. TEX. LABOR CODE ANN. § 406.031 (Vernon 1996).

■ An independent contractor has been defined as any person who, "in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details." *Pitchfork Land & Cattle Co. v. King,* 162 Tex. 331, 346 S.W.2d 598, 602–03 (Tex.1961); *Duran v. Furr's Supermarkets, Inc.,* 921 S.W.2d 778, 786 (Tex. App.—El Paso 1996, writ denied); *Hoechst Celanese Corp. v. Compton,* 899 S.W.2d 215, 220 (Tex.App.—Houston [14th Dist.] 1994, writ denied). Therefore, although many factors, such as benefits, or training, or paycheck deductions for social security and taxes, may contribute to the determination of whether a person is an employee or an independent contractor, *Compton,* 899 S.W.2d at 221; *Sherard v. Smith,* 778 S.W.2d 546, 549 (Tex.App.—Corpus Christi 1989, writ denied), the fundamental factor is the right of control. *Duran,* 921 S.W.2d at 786; *see Ross v. Texas One Partnership,* 796 S.W.2d 206, 210–11 (Tex.App.—Dallas 1990), *writ denied per curiam,* 806 S.W.2d 222 (Tex.1991).

■ The standard test to determine whether one is acting in the capacity of an independent contractor or as an employee measures the amount of control that the employer exerts or has a right to exert over the details of the work. *Newspapers Inc. v. Love,* 380 S.W.2d 582, 591 (Tex.1964); *Compton,* 899 S.W.2d at 220. The same test applies whether the claim arises at common law or under workers' compensation. *Thompson*

v. *Travelers Indem. Co.,* 789 S.W.2d 277, 278 (Tex.1990). In determining the amount of control retained by the employer, a court is required to examine a number of factors including: 1) the independent nature of the worker's business; 2) the worker's obligation to furnish the necessary tools, supplies, and materials to perform the job; 3) the worker's right to control the progress of the work except as to final results; 4) the time for which he is employed; and 5) whether he is paid for time worked or by the job. *Pitchfork Land & Cattle Co.,* 346 S.W.2d at 603; *Industrial Indem. Exch. v. Southard,* 138 Tex. 531, 160 S.W.2d 905, 906 (Tex.1942); *Compton,* 899 S.W.2d at 220. An "employer" must control not merely the end sought to be accomplished, but also the means and details of its accomplishment. *Thompson,* 789 S.W.2d at 278. Examples of the type of control normally exercised by an employer include when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of the work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result. *Id.* at 278–79.

After reviewing the record, we find the primary evidence on the issue of control in two conflicting statements provided by Esteban Alvarado.[2] Esteban Alvarado gave Old Republic a recorded statement on March 21, 1989. As a customer service representative for U.S. Home, Esteban's job entailed receiving complaints about necessary foundation repairs on houses built by U.S. Home and then hiring sub-contractors to perform the repairs. He affirmed that appellants "were sub-contracting work for U.S. Home" and "work for themselves." He would hire them on a per-job basis. Esteban admitted appellants did the small details of the job on their own and added, "Ninety percent of the time, they work on their own and then I just check out that it's been done the right way." He was not at the work site as a supervisor "to tell them what to do, but to see that it is done to my satisfaction and to U.S. Home's satisfaction." The only reason he was there all the time, he stated, was because Torres

---

2. Esteban Alvarado is the father of appellant Steve Alvarado. For purposes of clarity, the senior Alvarado will be referred to hereafter by his first name.

could not communicate with English-speaking customers or suppliers and required Esteban's assistance as his translator. Esteban did not have the authority to fire appellants. Appellants brought their own tools. U.S. Home provided some materials, but appellants were responsible for providing the rest of the materials.

Esteban's recorded interview provides evidence of four of the five enumerated factors: the appellants worked for themselves, worked independently, provided their own tools, provided supplies and materials, were employed by the job, and only the end result was subject to control. This evidence strongly suggests appellants were independent contractors rather than employees.

On April 27, 1989, Esteban submitted a two page affidavit containing the following statement:

> I was in direct charge of the work that was to be done and I supervised the work that was to be done. These men [appellants], though paid on a contract basis, looked to me for direct supervision. I controlled the details of the work that was to be done. For all practical purposes, they were employees of U.S. Home. They were simply paid on a contract basis.

Esteban states no facts from which it can be discerned whether the "supervision," "control," or "details" referred to actually concerned step-by-step instructions, the amount of time spent on particular aspects of the work, the tools and appliances used to perform the work, the physical method or manner of accomplishing the end result, or only the end result as he stated in his previous interview.

Lindsey Johnson was the branch manager of Gallagher Bassett Services, Inc., a third-party administrator that processes claims for insurance companies, including Old Republic. Johnson, who processed appellants' claims and ultimately denied them, explained that he was not impressed by Esteban's affidavit because he had personally interviewed Esteban a month before the affidavit was prepared and recorded his statement containing squarely contradictory information. Johnson felt Esteban's earlier statement was more accurate for several reasons. At the time

Esteban recorded his statement, he had not spoken with his son's attorney. The interview was relaxed and informal, and Esteban had talked freely, providing information detrimental to his son's claim. In Johnson's opinion, the language in the affidavit, compared to that of the recorded statement, was less natural and did not appear to be entirely Esteban's own words. Furthermore, Esteban was appellant Alvarado's father and, at the time of his second statement, was no longer an employee of U.S. Home. Forced to choose between two conflicting statements by the same witness, Johnson perceived the one made closer to the time of the accident and unquestionably in the witness's own words to be more reliable. All other information available to him solidly established that appellants were independent contractors. It was not unreasonable for Johnson to conclude that Old Republic was not liable to appellants on their workers' compensation claims.

■ The record shows that the instant suit was filed on May 29, 1991. Sometime in 1991, Johnson left his employment with Gallagher Bassett on good terms and became Assistant Director of Risk Management for Harris County. Although initially named as a co-defendant in the instant case, appellants non-suited Johnson with prejudice on August 25, 1994. Johnson was deposed regarding the reasons for his choice between Esteban's recorded statement and affidavit. There is no evidence showing, nor do appellants suggest, that Johnson would in any way be affected by the outcome of the suit. For these reasons, we conclude that his explanation of his state of mind regarding Old Republic's liability on appellants' claims is acceptable summary judgment evidence.

■ After reviewing Esteban Alvarado's affidavit, we conclude that it is not competent summary judgment evidence and cannot create a fact issue in this case. The affidavit states legal conclusions and sets out no facts concerning the right of control between U.S. Home and appellants; thus, it has no probative evidentiary value. *Manges v. Astra Bar, Inc.,* 596 S.W.2d 605, 610 (Tex. Civ.App.—Corpus Christi 1980, writ ref'd

n.r.e.); *see also Sherard,* 778 S.W.2d at 549 (expert witness's affidavit listed numerous examples of details which employers generally had right to control but failed to mention any facts directly concerning the employment relationship between the parties). Legal conclusions in affidavits are insufficient to raise fact issues in response to motions for summary judgments. *Mercer v. Daoran Corp.,* 676 S.W.2d 580, 583 (Tex.1984); *Swiderski v. Prudential Prop. & Cas. Ins. Co.,* 672 S.W.2d 264, 268 (Tex.App.—Corpus Christi 1984, writ dism'd).

◼ Esteban's affidavit was accompanied by a letter from appellants' attorney stating: "The affidavit establishes that the claimant was an employee of U.S. Home and not an independent contractor." Appellants do not explain the basis for this conclusion. A legal conclusion is inadequate as summary judgment proof in the absence of supporting facts and reasoning. *Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991); *Mercer,* 676 S.W.2d at 583; *H.S.M. Acquisitions, Inc.,* 917 S.W.2d at 881.

◼ Our determination that Esteban's affidavit is not competent summary judgment evidence does not end our examination of the issue of control. Texas case law demonstrates two ways in which the necessary retention of the right to control is established. If there is a written contract, we look to see if there is evidence that the employer explicitly retained control over more than the end result of the independent contractor's performance. *See Newspapers, Inc.,* 380 S.W.2d at 592 (contract which does not grant principal right to control details of performance is not overridden by exercise of some control where such control is not persistent and acquiescence to control not pronounced); *Farrell v. Greater Houston Transp. Co.,* 908 S.W.2d 1, 3 (Tex.App.—Houston [1st Dist.] 1995, no writ) (employer retained no express right of control in contract and exercised very little control); *Ross,* 796 S.W.2d at 210 (absence of right of control in contract proves relationship is not employer/employee unless hiring party exercised control in a manner inconsistent with the contractual provisions). If there is no written contract establishing the status of the worker or the employer's right to control his work, an employee-employer relationship may be established circumstantially by evidence of actual exercise of control by the employer over the work of the independent contractor. *Anchor Cas. Co. v. Hartsfield,* 390 S.W.2d 469, 471 (Tex.1965); *Continental Ins. Co. v. Wolford,* 526 S.W.2d 539, 541 (Tex.1975) (facts disclosed no significant control over details of independent contractors performance other than to see job was done correctly); *Hartsfield,* 390 S.W.2d at 471 (facts produced only a scintilla of evidence of right to control details of performance other than end results); *INA of Texas v. Torres,* 808 S.W.2d 291, 293–95 (Tex. App.—Houston [1st Dist.] 1991, no writ) (facts proved employer's exercise of extensive control of details of performance and workman's inability to refuse directions). After reviewing the record, we find no evidence of a written contract and no evidence from which we can infer that U.S. Home held or exercised the right of control over appellants' work.

Appellants submitted only part of Alejandro Martinez's deposition as summary judgment evidence. Appellants produced no evidence concerning Martinez's working relationship with U.S. Home at the time of the accident. In the absence of facts upon which to base an inference that he may have been an employee rather than an independent contractor as shown by other evidence, we cannot reasonably draw any inferences in Martinez's favor.

According to Steve Alvarado's deposition, he went to work for his father, Esteban, who worked for U.S. Home, in early 1989. He repeated several times that he worked for his father, who would pay him and the other appellants by the job in cash. Alvarado also stated that he thought U.S. Home might have sometimes issued checks for the work made out to all three appellants, but admitted that only Torres ever endorsed any checks. No taxes or social security were deducted from his pay. According to Alvarado, appellants got "direction for the work" only from his father, but he mentioned no facts from which the meaning of "direction for the work" can be inferred. On one or two occasions, Alvarado saw David Garcia, a

U.S. Home vice-president, but Garcia never gave him any instructions and was never present at the job site.

Homero Torres recalled receiving checks made out to him from U.S. Home, but he could not recall if taxes or social security were deducted. Torres admitted that he worked for himself, with no boss other than his clients. U.S. Home paid him by the job, not periodically, and it did not require him to punch a clock because he was working independently. He was contacted by Esteban whenever there was contract work available. If more men were needed, Torres would call Martinez and Alvarado for help. U.S. Home issued checks, payable to Torres only, when the job was complete. Torres would cash the check and pay Martinez and Alvarado for their work in cash. Torres made it clear that he was responsible for the pace at which the other two men worked to make sure the job was done right. When asked, "Would [Esteban] tell you how to do your job or would he tell you what needed to be done?" Torres replied, "He would tell me what to do in his way." Torres stated that Esteban was present most of the time while a job was in progress, but he did not say why. He did not mention any sort of contractual agreement with U.S. Home. The only times Torres met or spoke with anyone from U.S. Home, other than Esteban, was when he collected his check for a completed job, and the encounters were brief and casual.

Appellants' depositions establish that Torres was an independent contractor who hired Alvarado and Martinez as his assistants. Appellants worked only on an "as-needed" basis. The record contains no evidence suggesting that they were not free to refuse a job. Torres controlled the pace of the work, received a check upon completion of the job, and was responsible for paying his assistants. Esteban, a U.S. Home employee, did not supervise the work to any appreciable extent. Alvarado's claim that he worked for his father, Esteban, does not alter his independent status. We find that appellants' depositions corroborate Esteban's recorded statement and support a conclusion that appellants were independent contractors.

On the date of the accident, appellants were restricted from leaving the job site anytime they wished because they had received a ride to the job site from Esteban in his company vehicle. However, this was apparently the exception rather than the rule. The fact that appellants were riding in a U.S. Home-owned van at the time of their injuries does not relate to a right of control, nor does it evidence a fringe benefit because the truck was indisputably provided for Esteban's use and convenience in his work, not appellants'. Furthermore, according to the uncontroverted testimony of David Garcia, the payment Torres negotiated for that day's work was less than usual because it was agreed that the transportation to and from the work site would be partial compensation.

■■■ Appellants and Old Republic both produced affidavits from experts as summary judgment proof. An expert's affidavit that fails to demonstrate an objective approach or state the basis upon which conclusions are reached is insufficient summary judgment proof. *Anderson,* 808 S.W.2d at 55. The affidavit must set forth facts, not legal conclusions. *Beta Supply, Inc. v. G.E.A. Power Cooling Sys., Inc.,* 748 S.W.2d 541, 542 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Harbour Heights Dev., Inc. v. Seaback,* 596 S.W.2d 296, 297 (Tex.Civ. App.—Houston [14th Dist.] 1980, no writ). A legal conclusion in an affidavit is insufficient by itself to raise an issue of fact in response to a motion for summary judgment or to establish the existence of a fact in support of a motion for summary judgment. *Anderson,* 808 S.W.2d at 55 (expert cited no facts and affidavit did not include the legal basis or reasoning for expert affiant's opinion); *Mercer,* 676 S.W.2d at 583; *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984); *cf. Evans v. Conlee,* 787 S.W.2d 570, 572 (Tex. App.—Corpus Christi 1990, writ denied) (in medical malpractice case, expert's affidavit stating merely that witness was familiar with applicable standard of care and that treatment provided was within that standard held insufficient to prove the standard of care; affiant must state what the standard is). Testimony that is comprised only of legal conclusions is insufficient to support a summary judgment as a matter of law, as is a

conclusory statement made by an expert witness. *Anderson,* 808 S.W.2d at 55 (Texas Supreme Court refused to accept lawyer's conclusory statements in support of a summary judgment in legal malpractice case).

■ Old Republic submitted the affidavit of an attorney, John Griffin, in support of its contention that appellants were not employees of U.S. Home. Griffin is board certified in consumer law, which includes expertise in insurance bad faith, and evaluates, on average, twenty-five cases each year to determine if a bad faith cause of action against an insurance carrier is appropriate. Griffin gained his personal knowledge of the claim and underlying case by reviewing and studying each item of Old Republic's summary judgment evidence; he cited each item clearly and separately by its type and location in the record. Griffin also cited the applicable legal standard appellants had to meet at that time—the demonstration of no reasonable basis for Old Republic's decision to deny benefits. He discussed the factual evidence in detail and explained why Old Republic's denial of appellants' claims for workers' compensation was reasonable in light of the facts showing that appellants were not U.S. Home employees. We conclude that Griffin's affidavit is competent summary judgment evidence because the factual basis of his expert opinion is clear. *Anderson,* 808 S.W.2d at 55; *Hall v. Rutherford,* 911 S.W.2d 422, 424–25 (Tex.App.—San Antonio 1995, writ denied).

■ In response, appellants offered the affidavit of John Gonzales, an attorney specializing in workers' compensation cases, as proof that Old Republic had no reasonable basis to deny their claims for the reason given. Gonzales said he reviewed "three OSHA No. 101 forms," both statements by Esteban Alvarado, and unspecified "file materials." None of the materials reviewed by Gonzales are attached to the affidavit nor are they identified to the record. It is, therefore, unclear what the "OSHA No. 101 forms" are and what "file materials" were reviewed. Gonzales does not discuss the evidence or apply it to the facts of the instant case; nor does he cite the legal standard for demonstrating bad faith before stating his

conclusions that appellants were employees of U.S. Home Corporation on the date of the accident and that Old Republic denied their claims in bad faith. In the absence of facts, legal conclusions are inadequate to raise an issue of fact in response to a motion for summary judgment despite the affiant's qualifications. *Anderson,* 808 S.W.2d at 55; *Mercer,* 676 S.W.2d at 583; *Brownlee,* 665 S.W.2d at 112; *Beta Supply, Inc.,* 748 S.W.2d at 542; *Harbour Heights Dev., Inc.,* 596 S.W.2d at 297. For this reason, we conclude that Gonzales's affidavit is not competent summary judgment evidence. Therefore, it is insufficient to raise a fact issue on appellants' status as employees or independent contractors.

■ David P. Garcia, vice-president and controller of U.S. Home, attested by affidavit that, based on his personal knowledge, Esteban Alvarado was a U.S. Home employee. He detailed the benefits Esteban received as an employee, including an office, use of a company vehicle, paid vacation, sick leave, paid holidays off, insurance, and participation in a profit-sharing plan. Federal income tax and social security contributions were withheld from his bi-weekly pay. Appellants, however, were not employees of U.S. Home. Garcia explained that U.S. Home Corporation sporadically contracted with Homero Torres to perform repair work on a per-job basis with negotiated payment. Torres was responsible for hiring his own helpers, none of whom were paid by U.S. Home. Neither Torres nor those who worked for him received any benefits, and no deductions for taxes or social security were made from the check issued to Torres. On or about March 15, 1989, Torres contracted to do repair work for U.S. Home. The negotiated price was somewhat less than usual because transportation to the work site was provided by U.S. Home. Torres hired Alvarado and Martinez to work on the project. Although, as an employee of U.S. Home, Garcia is an interested witness, we conclude that his affidavit is competent summary judgment evidence because his statements could have been readily controverted. In addition, we find that Garcia's statements are corroborated by other evidence. TEX.R. CIV. P. 166a(c); *Gray*

*v. H.E.B. Food Store No. 4,* 941 S.W.2d 327, 330 (Tex.App.—Corpus Christi 1997, n.w.h.).

The only records possessed by U.S. Home concerning Torres were copies of unbudgeted work orders and checks identifying Torres as a contractor engaged for a series of one to two-day job assignments performed at irregular intervals over an eight month period. The undisputed records show that repair jobs for U.S. Home were brief in duration and very infrequent.[3] Torres received a check immediately upon the completion of each job. No deductions were made for income taxes, social security, or anything else.

According to Frank Matthews, U.S. Home's Custodian of Personnel and Payroll Records, the company had no personnel files or payroll records for any of the appellants because they were independent contractors, not employees. The record contains no evidence that appellants were entitled to fringe benefits, such as vacation or sick leave, nor do appellants claim any such entitlements, other than their workers' compensation claims. No other records concerning appellants were produced, and appellants do not claim that any other records exist.

■ Where only one reasonable conclusion can be inferred from the uncontroverted controlling facts, the question of whether one is an "employee" or "independent contractor" is a question of law. *Industrial Indem. Exch.,* 160 S.W.2d at 906; *Crow v. TRW, Inc.,* 893 S.W.2d 72, 78 (Tex.App.—Corpus Christi 1994, no writ); *Sherard,* 778 S.W.2d at 548. The record contains no evidence that U.S. Home had any right of control over appellants' work, other than approval of the end result. The only control actually exercised by U.S. Home was the site of the jobs, which necessarily depended on the homeowner's location. A mere scintilla of control does not establish an employer-employee relationship. *Hartsfield,* 390 S.W.2d at 471.

The competent summary judgment evidence conclusively establishes that appellants were independent contractors on the day of the accident and not employees of U.S. Home. Because Independent contractors are not entitled to workers' compensation benefits and because Old Republic was not liable on appellants' claims as a matter of law, we hold that Old Republic did not deny appellants' claims in bad faith.

We hold that the trial court did not err in granting Old Republic's motion for summary judgment on the ground that a reasonable basis for denial existed. We conclude that the result is the same under the new "reasonably clear" liability standard because it is absolutely clear that Old Republic was not liable to appellants for workers' compensation. We overrule appellants' first point of error.

By their second point of error, appellants contend that the trial court erred in granting summary judgment on their claims for exemplary damages based on gross negligence.

■ Because the cause of action for bad faith is not tenable due to a total lack of liability on Old Republic's part, appellants have no basis to seek exemplary damages on a gross negligence theory. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc.,* 780 S.W.2d 417, 426 (Tex. App.—Texarkana 1989) (where insurer has cause for denial or delay of payment on claim sufficient to defeat bad faith cause of action, gross negligence action cannot be sustained), *aff'd,* 811 S.W.2d 552 (Tex.1991). Accordingly, we hold that the trial court did not err in granting Old Republic's motion for summary judgment on appellants' claims for exemplary damages. We overrule appellants' second point of error.

Due to our disposition of appellants' first and second points of error, it is not necessary to discuss appellants' third point of error. TEX.R.APP. P. 90(a).

We affirm the trial court's order granting Old Republic's motion for summary judgment.

---

**3.** The unbudgeted work orders show that Homero Torres worked a total of thirteen days in 1988.

From January through mid-March of 1989, Torres worked a total of eight days.