**BENNACK FLYING SERVICE, INC., Appellant,**

v.

**Dagoberto BALBOA, et al., Appellees.**

**Texas Dusting Service, Inc., Appellant,**

v.

**Kathryn Stanford, et al., Appellees.**

**Nos. 13–98–392–CV, 13–98–593–CV.**

Court of Appeals of Texas, Corpus Christi.

June 24, 1999.

Rehearing Overruled Aug. 12, 1999.

R. Matt Lair, Ron A. Sprague, Gendry & Sprague, San Antonio, for appellant.

Charlie J. Cilfone, Tom Lockhart, Roger W. Hughes, Adams & Graham, Harlingen, Macey Reasoner Stokes, Baker & Botts, Frank A. Monago, Brit T. Brown, Beirne, Maynard & Parsons, Houston, Karl W. Koen, L. Mark McMillon, Grau & Bassett, Dallas, Edward A. Stapleton, III, Stapleton, Livesay & Cowen, Brownsville, J. Thomas Rhodes, III, Lyons & Rhodes, San Antonio, Keith C. Livesay, Livesay & Cowen, Pharr, Ramon Garcia, Ilene Peralez, Law Offices of Ramon Garcia, Edinburg, for appellees.

Hugh P. Touchy, Willette, Guerra & Trevino, Brownsville, David R. Poage, Macey Reasoner Stokes, Baker & Botts, Houston, amicus curiae.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ.

## O P I N I O N

Opinion by Justice HINOJOSA.

In cause no. 13–98–392–CV, appellees, Dagoberto Balboa ("Balboa") and his wife Ascension Balboa, sued appellant, Bennack Flying Service, Inc. ("Bennack") and others[1] for injuries Balboa allegedly suffered from exposure to pesticides sprayed on cotton fields. Bennack filed a motion for summary judgment asserting official immunity, but the motion was denied by the trial court.

In cause no. 13–98–593–CV, appellees, Kathryn Stanford, individually and as next friend of Terry Stanford, and intervenors, Bobby Ferguson, Shirley Ferguson, Kathryn Torres, Guadalupe Calvo, Sr., Josefina Calvo, Guadalupe Calvo, Jr., Maribel Reyes, and Monica Calvo (collectively "Stanford appellees"), sued appellant, Texas Dusting Service, Inc. ("Texas Dusting") and others[2] for injuries they sustained when cotton fields were crop dusted. Texas Dusting filed a motion for summary judgment asserting official immunity, but the motion was denied by the trial court.

Bennack and Texas Dusting filed these interlocutory appeals pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 54.014(5) (Vernon Supp.1999). Because the same issue was raised in both appeals—whether Bennack and Texas Dusting are employees of the Texas Boll Weevil Eradication Foundation (the "Foundation")—we agreed to consolidate these two cases. We affirm the trial courts' orders denying the motions for summary judgment.

Bennack and Texas Dusting entered into identical contracts with the Foundation to spray fields in the Lower Rio Grande Valley for the purpose of eradicating the cotton boll weevil. On July 13, 1995, Bennack allegedly sprayed pesticide over a field in

Willacy County in which Balboa was operating a tractor. Balboa was not warned the spraying would occur, and he inhaled, injested, and came in contact with the pesticide. As a result, he suffered burning and swelling of his eyes, respiratory distress, headaches, nausea, and vomiting. He continues to suffer from the exposure. Balboa sued Bennack for negligence, negligence *per se,* and gross negligence. Ascension also sued for loss of consortium.

The Stanford appellees reside near areas sprayed several times during the summer of 1995 by Texas Dusting. They allege no warning was given before the fields near their homes were sprayed and that they suffered from the exposure to pesticides. The Stanford appellees brought claims for negligence, negligence *per se,* and strict liability.

Bennack and Texas Dusting each filed motions for summary judgment contending section 74.110 of the agriculture code afforded them immunity as employees of the Foundation. *See* TEX. AGRIC. CODE ANN. § 74.110 (Vernon 1995). Balboa and the Stanford appellees responded that Bennack and Texas Dusting were independent contractors and, therefore, not entitled to summary judgment. The trial courts denied the motions. Bennack and Texas Dusting contend the trial courts erred in denying their motions for summary judgment because they are entitled to immunity as employees of the Foundation.

The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled its initial burden to: (1) establish as a matter of law that there remains no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action, or (2) establish its affirmative defense to the plaintiff's cause of action as a matter of law. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989);

---

1. Others sued include G & G Lease Service, Inc., Citation Oil & Gas, Corp, Cheminova, and the Texas Boll Weevil Eradication Foundation. These parties are not participating in this interlocutory appeal.

2. The Texas Boll Weevil Eradication Foundation and Cheminova were also sued. The Foundation was subsequently nonsuited, and Cheminova is not a party to this appeal.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true. *Nixon,* 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

■ An independent contractor is any person who, "in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details." *Pitchfork Land & Cattle Co. v. King,* 162 Tex. 331, 346 S.W.2d 598, 602–03 (1961); *Alvarado v. Old Republic Ins. Co.,* 951 S.W.2d 254, 259 (Tex.App.—Corpus Christi 1997, no writ); *Hoechst Celanese Corp. v. Compton,* 899 S.W.2d 215, 220 (Tex.App.—Houston [14th Dist.] 1994, writ denied). Although many factors, such as benefits, or training, or paycheck deductions for social security and taxes, may contribute to the determination of whether a person is an employee or an independent contractor, the fundamental factor is the right of control. *Alvarado,* 951 S.W.2d at 259 (citations omitted).

■ The standard tests for determining whether one is acting in the capacity of an independent contractor measure the amount of control that the employer exerts or has a right to exert over the details of the work. *Newspapers, Inc. v. Love,* 380 S.W.2d 582, 591 (Tex.1964); *Alvarado,* 951 S.W.2d at 259; *Compton,* 899 S.W.2d at 220. The court generally analyzes five factors in determining the amount of control retained by the employer: (1) the independent nature of the workman's business; (2) his obligation to furnish the necessary tools, supplies, and materials to perform the job; (3) his right to control the progress of the work except as to final results; (4) the time for which he is employed; and (5) whether he is paid by time or by job. *Pitchfork Land & Cattle Co.,*

346 S.W.2d at 603; *Alvarado,* 951 S.W.2d at 259; *Crow v. TRW, Inc.,* 893 S.W.2d 72, 78 (Tex.App.—Corpus Christi 1994, no writ); *Sherard v. Smith,* 778 S.W.2d 546, 548 (Tex.App.—Corpus Christi 1989, writ denied). An "employer" must control not merely the end sought to be accomplished, but also the means and details of its accomplishment. *Thompson v. Travelers Indem. Co.,* 789 S.W.2d 277, 278 (Tex.1990); *Alvarado,* 951 S.W.2d at 259. Examples of the type of control normally exercised by an employer include when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of the work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result. *Thompson,* 789 S.W.2d at 278; *Alvarado,* 951 S.W.2d at 259.

■ If there is a written contract, we look to see if there is evidence that the employer explicitly retained control over more than the end result of the independent contractor's performance. *Alvarado,* 951 S.W.2d at 261; *see Newspapers, Inc.,* 380 S.W.2d at 592 (contract which does not grant principal right to control details of performance is not overridden by exercise of some control where such control is not persistent and acquiescence to control not pronounced); *Farrell v. Greater Houston Transp. Co.,* 908 S.W.2d 1, 3 (Tex.App.—Houston [1st Dist.] 1995, writ denied) (employer retained no express right of control in contract and exercised very little control); *Ross v. Texas One Partnership,* 796 S.W.2d 206, 210 (Tex.App.—Dallas 1990), *writ denied per curiam,* 806 S.W.2d 222 (1991) (absence of right of control in contract proves relationship is not employer/employee unless hiring party exercised control in a manner inconsistent with the contractual provisions).

■ Where a dispute exists about the controlling facts and more than one reasonable conclusion can be inferred, the question of whether one is an "employee" or "independent contractor" is a question

of fact. *See Alvarado,* 951 S.W.2d at 264; *Crow,* 893 S.W.2d at 78; *Sherard,* 778 S.W.2d at 548.

The agriculture code provides as follows:

### § 74.110. Liability of Foundation Members, Officers, and Employees

(a) Except for instances of gross negligence, individual criminal actions, or acts of dishonesty, the foundation's members, directors, officers, and employees are not individually liable to a cotton grower or other person for:

   (1) errors in judgment;

   (2) mistakes; or

   (3) other acts or omissions.

(b) A foundation member, officer, or employee is not individually liable for an act or omission of another foundation member, officer, or employee.

TEX. AGRIC. CODE ANN. § 74.110 (Vernon Supp.1999) (amendments to this section are not relevant to the case at issue). To prove that they were employees, Bennack and Texas Dusting attached copies of their contracts with the Foundation.

According to the contracts, the Foundation agreed to provide the pesticide, maps of the areas to be sprayed, and personnel to evaluate the application of the pesticide. A Foundation person was to record the times for each load delivered. Although the Foundation controlled when the spraying operation would commence and end, daily flying times, and fields to be sprayed, the contracts specify this was necessary because of "numerous biological, entomological, and environmental factors."

The Foundation had the right to reject planes, pilots, or equipment that did not satisfy licensing, certification, or contract requirements. Many of the obligations and equipment specifications imposed on Bennack and Texas Dusting were related to federal or state laws and regulations, or to the pesticide manufacturer's recommendations. As with any contractual relationship, the Foundation retained the right to terminate the services of Bennack and Texas Dusting for failing to comply with the terms of the contracts. Bennack and Texas Dusting agreed to be liable for any expenses such termination might cause the Foundation.

The contracts also provide that Bennack and Texas Dusting were to choose which planes, pilots, loaders, service crews, storage and containment areas, and equipment they used, but they had to meet contract specifications. They were responsible for obtaining all necessary certificates, registrations, log books, and insurance. Bennack and Texas Dusting could select, make arrangements with, and pay all airports they used during the operation. Their representatives, with decision making authority, were to be present at all times to direct the operations. Bennack and Texas Dusting were responsible for informing all personnel of the proper handling of the pesticides and for providing the appropriate safety equipment. Their pilots had the discretion to determine when not to spray an area or when to cease spraying so as to avoid contaminating persons on the ground. Bennack and Texas Dusting were to clean up all spills and pay for any damages to airports caused by their equipment or personnel. They had to approve the load times as recorded by the Foundation time keeper. To be paid, Bennack and Texas Dusting had to submit weekly invoices to the Foundation.

The contracts do not explicitly state whether Bennack and Texas Dusting were independent contractors or Foundation employees. The contracts provide that Bennack and Texas Dusting were to be paid per invoice. They do not state that the Foundation would be responsible for paying the salaries, taxes, or social security for the personnel provided by Bennack and Texas Dusting. The contracts do not preclude Bennack and Texas Dusting from contracting with other customers. The duration of the contracts was limited—spraying operations were to run from ap-

proximately April 1, 1995 to September 30, 1995.

From the facts stated above, we conclude that more than one reasonable conclusion can be inferred. While the Foundation set the schedules, determined the fields to be sprayed, specified the necessary equipment, and retained the right to approve the planes, airports, pilots, and equipment, these actions were necessary to assure the quality and success of the eradication program. On the other hand, Bennack and Texas Dusting are corporations and retained the right to choose equipment, airports, and personnel subject to the terms of the contract. They were contracted for a specific job of limited duration and were paid per invoice. They were not precluded in contracting with other customers during the contract period. Accordingly, we conclude that whether the Foundation had the right of control over Bennack and Texas Dusting is a question of fact.

Bennack also included as summary judgment evidence excerpts from Balboa's deposition and the affidavit of Cantley Phillip Bennack. This evidence does not conclusively establish that Bennack was a Foundation employee. Balboa's testimony deals mainly with notice and injuries. Bennack's affidavit states his belief that, under the terms of the contract and subsequent actions, the Foundation had the right of control. He does not elaborate on what terms or actions led him to this belief.

We hold the trial courts did not err in finding that genuine issues of material fact exist in these two cases. Accordingly, we overrule Bennack's sole issue and Texas Dusting's first issue.

In light of our disposition, we need not address Texas Dusting's remaining issues. TEX.R.APP. P. 47.1.

We affirm: (1) the trial court's order denying Bennack Flying Service, Inc.'s motion for summary judgment in cause no. 13–98–392–CV and (2) the trial court's order denying Texas Dusting Service, Inc.'s motion for summary judgment in cause no. 13–98–593–CV.