NUMBER 13-99-515-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


____________________________________________________________________


REDI-CARPET SALES, INC., Appellant,


v.



BARBARA HEARRON, Appellee.

____________________________________________________________________


On appeal from the 55th District Court of Harris County,

Texas.

____________________________________________________________________


O P I N I O N



Before Justices Dorsey, Yañez, and Seerden(1)


Opinion by Justice Yañez


 Redi-Carpet Sales, Inc. (Redi-Carpet), appellant, brings this appeal
to challenge a judgment rendered in favor of Barbara Hearron. We
affirm.

Background

 Barbara Hearron was the resident manager of the Alta Vista
Apartments in Harris County, Texas. Redi-Carpet sold new carpeting
to the Alta Vista Apartments and arranged to have the carpet installed. 
Hearron was not satisfied with the installation and contacted Redi-Carpet, where she spoke with the Vice President of Sales and
Operations, Douglas Odle. Redi-Carpet agreed to correct the
deficiencies in the installation and arranged for crews of installers to
work on the apartments. On October 13, 1996, Hearron was walking
past an apartment in which an installer was working, when a piece of
carpet padding was thrown out the door and onto the sidewalk. 
Hearron fell, either as a result of being hit by the padding, or because
it landed directly in front of her, tripping her. The installer working on
that apartment was Leodegario Melendez. 

 Hearron brought suit because of injuries she suffered as a result
of the accident. Initially, Hearron sued Redi-Carpet, Inc., but over the
course of prosecuting the suit, added Redi-Carpet Sales, Inc.(2), and
Leodegario Melendez a/k/a Antolin Gonzalez. The case was tried to a
jury, which found that Melendez's negligence caused Hearron's injuries. 
The jury also found that Melendez was an employee of Redi-Carpet and
was acting in the course and scope of his employment at the time of
the accident. The jury found that Hearron was entitled to $185,100 in
damages. The trial court rendered judgment that Hearron recover
$185,100 from Redi-Carpet.(3)

 Redi-Carpet now challenges the judgment of the trial court. Redi-Carpet argues that: (1) the trial court erred in denying Redi-Carpet's
motion for a directed verdict on the issue of whether Melendez was an
independent contractor or an employee of Redi-Carpet; (2) the trial court
erred in submitting a question to the jury as to whether Melendez was
an employee of Redi-Carpet or an independent contractor; and (3) the
evidence was factually insufficient to support the jury's finding that
Melendez was an employee of Redi-Carpet acting in the course and
scope of his employment at the time Hearron was injured. 

The Directed Verdict

 A directed or instructed verdict is proper when: (1) a specifically
indicated defect in the opponent's pleadings makes it insufficient to
support a judgment; (2) the evidence conclusively proves a fact that
establishes a party's right to judgment as a matter of law; or (3) the
evidence offered on a cause of action is insufficient to raise an issue of
fact. City of Alamo v. Casas, 960 S.W.2d 240, 248 (Tex. App.--Corpus
Christi 1997, pet. denied); Nelson v. American Nat'l Bank of Gonzales,
921 S.W.2d 411, 414 (Tex. App.--Corpus Christi 1996, no writ). We
review denials of motions for instructed verdict by a legal sufficiency,
or "no evidence," standard of review. Casas, 960 S.W.2d at 248; City of
Alamo v. Montes, 904 S.W.2d 727, 732 (Tex. App.--Corpus Christi
1995, writ dism'd, 934 S.W.2d 85 (Tex. 1996). 

 When reviewing a legal sufficiency challenge, we consider all the
evidence in the light most favorable to the prevailing party, indulging
every reasonable inference in that party's favor. Associated Indem.
Corp. v. CAT Contracting, 964 S.W.2d 276, 286 (Tex. 1998); Norwest
Mortgage, Inc. v. Salinas, 999 S.W.2d 846, 853 (Tex. App.--Corpus
Christi 1999, pet. denied). A legal sufficiency challenge is sustained
when the record discloses: (1) that there is a complete absence of
evidence of a vital fact; (2) that the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital
fact; (3) that the evidence offered to prove a vital fact is no more than
a scintilla; or (4) that the evidence conclusively establishes the opposite
of the vital fact. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706,
711 (Tex. 1997); Norwest Mortgage, 999 S.W.2d at 853. Redi-Carpet
contends that Melendez was an independent contractor and there was
no evidence that he was an employee of Redi-Carpet.

Independent Contractor Status

 An independent contractor is any person who, "in the pursuit of an
independent business, undertakes to do a specific piece of work for
other persons, using his own means and methods, without submitting
himself to their control in respect to all its details." Pitchfork Land &
Cattle Co. v. King, 162 Tex. 331, 346 S.W.2d 598, 602-03 (1961);
Bennack Flying Serv., Inc. v. Balboa, 997 S.W.2d 748, 751 (Tex. App.--Corpus Christi 1999, pet. dism'd w.o.j.); Alvarado v. Old Republic Ins.
Co., 951 S.W.2d 254, 259 (Tex. App.--Corpus Christi 1997, no writ);
Hoechst Celanese Corp. v. Compton, 899 S.W.2d 215, 220 (Tex.
App.--Houston [14th Dist.] 1994, writ denied). Although many factors,
such as benefits, or training, or paycheck deductions for social security
and taxes, may contribute to the determination of whether a person is
an employee or an independent contractor, the fundamental factor is
the right of control. Bennack, 997 S.W.2d at 751 (citing Alvarado, 951
S.W.2d at 259).

 The standard tests for determining whether one is acting in the
capacity of an independent contractor measure the amount of control
that the employer exerts or has a right to exert over the details of the
work. Newspapers, Inc. v. Love, 380 S.W.2d 582, 591 (Tex. 1964);
Bennack, 997 S.W.2d at 751; Alvarado, 951 S.W.2d at 259; Compton,
899 S.W.2d at 220. Appellate courts generally analyze five factors in
determining the amount of control retained by the employer: (1) the
independent nature of the workman's business; (2) his obligation to
furnish the necessary tools, supplies, and materials to perform the job;
(3) his right to control the progress of the work except as to final
results; (4) the time for which he is employed; and (5) whether he is
paid by time or by job. Pitchfork Land & Cattle Co., 346 S.W.2d at 603; 
Bennack, 997 S.W.2d at 751; Alvarado, 951 S.W.2d at 259. An
"employer" must control not merely the end sought to be accomplished,
but also the means and details of its accomplishment. Thompson v.
Travelers Indem. Co., 789 S.W.2d 277, 278 (Tex. 1990); Bennack, 997
S.W.2d at 751; Alvarado, 951 S.W.2d at 259. Examples of the type of
control normally exercised by an employer include when and where to
begin and stop work, the regularity of hours, the amount of time spent
on particular aspects of the work, the tools and appliances used to
perform the work, and the physical method or manner of accomplishing
the end result. Thompson, 789 S.W.2d at 278; Bennack, 997 S.W.2d
at 751; Alvarado, 951 S.W.2d at 259.

 If there is a written contract, we look to see if there is evidence
that the employer explicitly retained control over more than the end
result of the independent contractor's performance. Bennack, 997
S.W.2d at 751;, 951 S.W.2d at 261; Farrell v. Greater Houston Transp.
Co., 908 S.W.2d 1, 3 (Tex. App.--Houston [1st Dist.] 1995, writ denied)
(employer retained no express right of control in contract and exercised
very little control); Ross v. Texas One Partnership, 796 S.W.2d 206, 210
(Tex. App.--Dallas 1990),writ denied per curiam, 806 S.W.2d 222
(1991) (absence of right of control in contract proves relationship is not
employer/employee unless hiring party exercised control in a manner
inconsistent with the contractual provisions).

 Where a dispute exists about the controlling facts and more than
one reasonable conclusion can be inferred, the question of whether one
is an "employee" or "independent contractor" is a question of fact. 
Bennack, 997 S.W.2d at 751-52; see Alvarado, 951 S.W.2d at 264 (the
question of whether one is an "employee" or an "independent
contractor" is a question of law when only one reasonable conclusion
can be inferred from the uncontroverted controlling facts); see also
Crow, 893 S.W.2d at 78 (same).

The Evidence Adduced at Trial

 In the course of the trial, both parties called several witnesses and
introduced documentary evidence. In order to discuss the trial court's
denial of Redi-Carpet's motion for directed verdict, we will first
summarize the evidence before the trial court on the issue of
Melendez's status as an employee or independent contractor.(4)

Gregory Waleke's Testimony

 Gregory Waleke, the chief executive officer of Redi-Carpet testified
that Redi-Carpet hired DCR Floor Covering to install flooring sold by
Redi-Carpet, and DCR in turn hired subcontractors to do the actual
installation work. Installers who wanted work would go to the Redi-Carpet plant in the morning, where DCR was housed, and they would
be assigned work by Robert Lidiak. Waleke stated that Lidiak is not an
employee of Redi-Carpet, but is rather an employee of DCR. Installers
would go to DCR each day to determine what job they would do that
day. According to Waleke, Redi-Carpet had about twenty employees,
all of whom received benefits including health care, vacation time, and
retirement. Redi-Carpet employs no installers, never provided benefits
for Melendez, and does not provide tools to installers. Waleke stated
that Douglas Odle was a manager at Redi-Carpet, but was never an
officer in the company. Waleke signed a response to a complaint filed
by Hearron with the Better Business Bureau concerning the original
installation, in which he stated "we have replaced all pad [sic]." Waleke
explained that the response did not mean that Redi-Carpet employees
went out and replaced the pads, but that Redi-Carpet had arranged for
the pads to be replaced. 

Douglas Odle

 Both parties read into evidence portions of the deposition of
Douglas Odle, the vice president of sales and operations at Redi-Carpet. 
According to the deposition excerpts, Odle was contacted by Hearron
because there were problems with the work originally done on the
carpet installation at the Alta Vista Apartments. Odle investigated,
making specific notes about what work needed to be done in each unit
to correct the problems with the original work. Odle also arranged for
the work to be done on a schedule to accommodate the residents of the
apartments. Installers sent to the apartments had to work according to
this schedule. Odle went out to the apartments whenever Hearron had
a question or complaint about the work. Odle handled complaints
involving nails having been left out by installers, and replaced a vacuum
cleaner damaged by an installer. Odle stated that had he seen a crew
acting rudely he would have had them leave the site and would have
arranged for another crew to be sent to the work site. According to his
deposition testimony, Odle did not generally deal with the crews
directly, but dealt with them through Robert Lidiak. Odle also stated
that it was Lidiak's job "to run the crews and talk to them about
anything that goes on at the job site or, you know with the job." Odle
also stated that the installers would get their work orders from Redi-Carpet, then go to the job site and install the material. 

 Odle stated that the installers did not have supervisors because all
the installers were independent contractors. According to Odle's
deposition testimony, DCR had no employees; Lidiak, whom Odle
describes as being "in charge of the crews" was an employee of Redi-Carpet. Odle stated that DCR was only a device by which Redi-Carpet
processed checks to the installers. Odle never informed Hearron that
the work on the apartments would be done by independent contractors.

 Odle stated that usually when a customer had a problem with an
installer, Lidiak would speak to the installer involved, and that Lidiak
kept track of incidents. An installer who was the subject of frequent
complaints would not be assigned to any further jobs.

Robert Lidiak

 Excerpts from Robert Lidiak's deposition were read into evidence,
although he also testified in person. Lidiak testified, in his deposition,
that DCR was housed in Redi-Carpet's building and did not have its
own telephone number, but rather used Redi-Carpet's telephone
number. According to the deposition testimony, although he works for
DCR, Lidiak did not have a job description for his position with DCR. 

 Redi-Carpet called Lidiak to the stand during the presentation of
their defense. Lidiak stated that the installers were independent
contractors and not employees of Redi-Carpet or DCR. Melendez was
paid on a "per-yard" basis for his work at the Alta Vista Apartments. 
The installers provide their own vehicles, tools and helpers. DCR does
not pay for insurance for the installers' vehicles, nor does DCR withhold
taxes from the money it pays to the installers. Occasionally Lidiak
would go to job sites to inspect the quality of the work being done. 
Lidiak testified that because he had not set DCR up as a company, he
did not know if it was created solely to pay bills for Redi-Carpet.

Barbara Hearron

 Hearron testified that when she first contacted Redi-Carpet about
her dissatisfaction with the way carpet was being installed at the Alta
Vista Apartments, she spoke with Doug Odle. Odle told Hearron that
Redi-Carpet would correct the problems. Hearron stated that she had
never heard of DCR before she began prosecuting her lawsuit. Hearron
testified that she saw Odle directing the installers at the Alta Vista
Apartments. She also stated that Odle would inspect the jobs as they
were completed. 

The Contracts

 Along with the testimony, a number of exhibits were admitted in
evidence. Two documents relevant to the relation of Melendez to Redi-Carpet were admitted. One of the documents is a contract between
Melendez and DCR, offered by Redi-Carpet. The contract defines
Melendez as a subcontractor and states that DCR "shall look to
Subcontractor for results only, and will not have the right at any time
to direct or supervise Subcontractor or any of his workmen, servants,
or employees in the performance of the work as to the manner, means
and method in which the work is performed." Melendez is required to
provide his own tools and equipment and is allowed to contract with
other companies. Redi-Carpet did not offer the original of the contract;
instead, a copy of the contract was admitted in evidence. The copy is
of poor quality, with some words illegible. Although it is dated June 8,
the year is unreadable. 

 The second document is an agreement in which DCR Floor
Covering, Inc. agrees to provide installation services to Redi-Carpet and
to pay Redi-Carpet a monthly fee for office space and services related to
office operations. The agreement is dated December 15, 1991.

Application of the Standard of Review to the Evidence

 Considering the evidence in the light most favorable to Hearron
and indulging every reasonable inference in her favor, we find that there
was sufficient evidence to deny Redi-Carpet's motion for a directed
verdict. There was testimony that DCR was not a separate entity, but
was actually a part of Redi-Carpet. The testimony of Odle shows that
Redi-Carpet maintained control over several aspects of the installation
process. Hearron also testified that she saw Odle giving instructions to
the installers. The contract would support the view that Melendez was
an independent contractor as to DCR; however, it is impossible to
determine when the contract was signed. It is possible the document
was signed after the incident with Hearron occurred. There is some
evidence that Redi-Carpet maintained sufficient control over Melendez
to have a jury consider whether he was, in fact, an employee rather
than an independent contractor. The trial court did not err in denying
the motion for directed verdict.

The Jury Questions

 Redi-Carpet argues that the trial court erred in overruling Redi-Carpet's objection to jury questions two and three. Redi-Carpet did not
object to jury question number two; therefore, any error as to question
number two is waived. Tex. R. App. P. 33.1. Question number three
asks whether Melendez was acting as an employee of Redi-Carpet, on
the occasion in question.

 Only issues raised by the evidence are to be submitted to the jury. 
Tex. R. Civ. P. 278. Whether a question is raised by the evidence is to
be determined by the same legal sufficiency standard that applies to the
determination of whether an instructed verdict should be given. 
Blonstein v. Blonstein, 831 S.W.2d 468, 471 (Tex. App.--Houston [14th
Dist.]), writ denied per curiam, 848 S.W.2d 82 (Tex. 1992). As
discussed above, the evidence that Melendez was Redi-Carpet's
employee, rather than an independent contractor, was sufficient under
the "no evidence" standard to support the denial of a directed verdict. 
Because the same standard is applied to determine if a question should
have been submitted to the jury, it follows that the trial court did not err
in overruling Redi-Carpet's objection to jury question three.

Factual Sufficiency of the Evidence

 Redi-Carpet challenges the jury's findings that Melendez was an
employee of Redi-Carpet and was acting in the course and scope of his
employment at the time that Hearron was injured. Redi-Carpet argues
that the findings are contrary to the great weight and preponderance of
the evidence. This is a challenge to the factual sufficiency of the
evidence supporting the jury finding. Id. at 473. 

 When considering a factual sufficiency challenge to a jury's verdict,
we consider and weigh all of the evidence. Maritime Overseas Corp. v.
Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998). A court of appeals can set
aside the verdict only if it is so contrary to the overwhelming weight of
the evidence that the verdict is clearly wrong and unjust. Id. at 407;
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). The court of appeals is
not a fact finder, and may not pass upon the witnesses' credibility or
substitute its judgment for that of the jury, even if the evidence would
clearly support a different result. Maritime Overseas Corp., 971 S.W.2d
at 407. The trier of fact is the sole judge of the credibility of the
witnesses and the weight to be given their testimony, and the appellate
court should not act as a thirteenth juror in assessing the evidence and
the credibility of the witnesses. Mohnke v. Greenwood, 915 S.W.2d
585, 589-90 (Tex. App.--Houston [14th Dist.] 1996, no writ).

 We do not find the jury's findings to be contrary to the great
weight and preponderance of the evidence. The jury heard testimony
by Odle and Hearron that indicated that Redi-Carpet exercised some
level of control over Melendez in the course of his work at the Alta Vista
Apartments. Although there was testimony that could support a
finding that Melendez was an independent contractor, the jury, as sole
judge of the credibility of the witnesses, was under no requirement to
believe this testimony.

 Redi-Carpet argues that the contracts establish that Melendez was
an independent contractor. The date of the contract between DCR and
Melendez is not legible as to the year it was signed. None of the
testimony relating to the contract indicates when it was signed. It is
possible that it was signed after Hearron's injuries were incurred. The
contract, which is written entirely in English, states that Melendez, who
does not speak English, had the contract explained to him by Antolin
Gonzalez. Lidiak, who also signed the contract, testified that Antolin
Gonzalez is an alias used by Melendez. The jury may have chosen to
assign little weight to a contract bearing an unclear date, that was
signed by a person who did not speak English, who signed using an
alias, as having explained the contract to himself. Moreover, the
contract purports to be between DCR and Melendez; it does not
address Melendez's relationship to Redi-Carpet.

 Redi-Carpet argues that it had no duty to control Melendez,
because Melendez was not an employee of Redi-Carpet. The jury found
that Melendez was an employee of Redi-Carpet and was acting in the
course and scope of his employment. We have found the evidence
sufficient to support this finding. Generally, an employer is vicariously
liable for torts committed by its employees in the course and scope of
their employment. GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605,
617-18 (Tex. 1999).

Conclusion

 The evidence before the trial court was legally sufficient to support
the trial court's denial of Redi-Carpet's motion for a directed verdict. 
Because there was some evidence that Melendez was a Redi-Carpet
employee, the trial court did not err by submitting to the jury the
question concerning Melendez's status as an employee or independent
contractor. The jury's findings that Melendez was an employee of Redi-Carpet and was acting in the course and scope of his employment
when Hearron was injured were not contrary to the overwhelming
weight of the evidence so as to render the verdict clearly wrong and
unjust.

 The judgment of the trial court is AFFIRMED.


 
 

 LINDA REYNA YAÑEZ

 Justice


Do not publish. Tex. R. App. P. 47.3.


Opinion delivered and filed this the

29th day of March, 2001.


1. Retired Chief Justice Robert Seerden assigned to this Court by the Chief Justice of
the Supreme Court of Texas pursuant to TEX.GOV'T CODE ANN.§ 74.003 (Vernon 1998).
2. The record does not explain the relationship of Redi-Carpet,
Inc. and Redi-Carpet Sales, Inc.
3. Although Melendez filed a pro se answer to Hearron's petition,
he did not participate in the trial and is not mentioned in the
judgment.
4. Redi-Carpet does not raise any issues pertaining to Hearron's
injuries or the damages awarded for those injuries, therefore, we will
not summarize the evidence that relates to her injuries and the
damages.